**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| In re:<br><br>STEVEN C. BATEMAN and VIRGINIA T. LEE,<br><br>Debtor.<br>―――――――――――――――――<br>EDMUND J. WOOD, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Steven C. Bateman and Virginia T. Lee,<br><br>Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1; LONG BEACH MORTGAGE COMPANY; WASHINGTON MUTUAL BANK, as successor-in-interest to Long Beach Mortgage Company by operation of law and/or as its attorney in fact; JP MORGAN CHASE BANK, N.A.; LENDER'S PROCESSING SERVICES, INC.; PLATINUM HOMES, INC., NORTHWEST TRUSTEE SERVICES, INC.,<br><br>Defendants. | Case No.: 07-13346-KAO<br><br>Adversary Case No. 09-1345-KAO:<br><br>PLAINTIFF EDMUND J. WOOD'S RESPONSE TO THE MOTION FOR PROTECTIVE ORDER FILED BY DEFENDANTS DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1 AND JP MORGAN CHASE BANK, N.A. |

Comes now Plaintiff, Edmund J. Wood, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Steven C. Bateman and Virginia T. Lee, by and through his attorney of record, Melissa A. Huelsman, Law Offices of Melissa A. Huelsman, P.S., hereby responds to the Motion for Protective Order brought by Defendant BANK NATIONAL TRUST COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1 ("Deutsche Bank") and JP MORGAN CHASE BANK, N.A. ("Chase").

## I. RELEVANT FACTS AT ISSUE

It is entirely unfortunate that Defendants Deutsche Bank and Chase have decided to ignore this Court's admonition at the hearing on the Motion to Correct Record or Vacate Order on Motion for Relief from Stay on March 5, 2010. This Court told counsel for these Defendants that in order to even consider the matters asserted by them in the pleadings, there would need to be a "parade of witnesses" brought before it. Instead, these Defendants have chosen to take unreasonable steps to prevent the Trustee from obtaining reasonably necessary information from corporate witnesses. These Defendants chosen to do so by affirmatively misrepresenting the Trustee's claims in this case and the facts underlying them, as well as the supporting documentation or lack thereof.

The Trustee is required to go over some of the controverted facts and the evidence obtained to date in this case in order to rebut the many inaccurate assertions made by the Defendants in their Motion. These disputed facts demonstrate why Plaintiff needs the testimony which he has requested from Defendants Deutsche Bank and Chase.

Defendants Deutsche Bank and Chase contend that because the Trustee acknowledges, consistent with the law of this state, that the holder of a Promissory Note may initiate a foreclosure in the event of non-payment he has waived his right to pursue the claims in this case.

(Presumably because the Note has been brought here to Seattle.) Mot.; 3:5-9. Defendants are ignoring the fact that the Trustee maintains that there are significant factual questions about the veracity of the signature on the Allonge currently attached to the Note; when the Allonge was signed and by whom; how and when the Allonge was affixed thereto; and whether another Allonge or other documents have previously been attached to the Note. There are also numerous questions about the affixing of another endorsement to the back of the second page of the Note, purportedly by someone acting on behalf of Long Beach Mortgage. A true and correct copy of the Note currently in the possession of counsel for these Defendants is attached to the Declaration of Melissa A. Huelsman, which is filed concurrently herewith ("Huelsman Dec.") as Exhibit "A". There is no evidence as to when this endorsement was affixed, by whom, and under what authority, among other questions. None of these questions have been answered and there has not been any court finding that the Note is enforceable under the UCC by anyone other than the Lender identified on the Note. The Trustee does not concede that the Note is enforceable by these Defendants.

In support of the Motion for Summary Judgment filed by these Defendants is a Declaration of "Jeffery Pittman" that was purportedly signed by the "Jeffery Pittman" who signed the Allonge that they ask this Court to accept as an original. A true and correct copy of the Declaration of Jeffery A. Pittman is attached to the Huelsman Dec. as Exhibit "B". The Trustee maintains that there are numerous reasons to believe that the signature on the Declaration is not the same as the signature on the Allonge currently attached to the Note, not the least of which is that apparently Mr. Pittman does not know how to spell his own first name. The Mr. Pittman who was formerly the President of Platinum Homes, Inc., filed for bankruptcy protection in the United States Bankruptcy Court for the Central District of California on April

25, 2008, Case No. 08-12156-ES. A true and correct copy of Mr. Pittman's Petition is attached to the Huelsman Dec. as Exhibit "C". In that petition, as this Court well knows, Mr. Pittman was required to sign his name in numerous places indicating his affirmation under penalty of perjury that all of the information contained therein is true and correct. Yet, nowhere on that Petition does Mr. Pittman indicate that he has an "alternative" spelling of his first name. He lists three versions of his name on the front page of the Petition, but nowhere does he indicate that his first name is spelled "Jeff_e_ry". All of the versions of his first name on the Petition are spelled "Jeff_r_ey" or "Jeff". *Id.* Yet, the Defendants ask this Court to accept the unverified "signature" of Mr. Pittman on a Declaration which he signs over an incorrect spelling of his first name, in spite of the fact that he did not ever represent to the Bankruptcy Court that he used this "alternative" spelling of his first name. Apparently Mr. Pittman chooses only to use this "alternative" spelling when it matches up to the spelling on the questionable Allonge, but not when he asked the Bankruptcy Court to discharge more than $4.2 million in unsecured debt. *Id.* The Declaration is not credible in the least. The Trustee has much more evidence about Mr. Pittman's ever changing signatures and name spellings, but will save that for later pleadings. For now, the Trustee maintains that this Court cannot believe anything written and allegedly signed by Mr. Pittman and he continues to challenge the validity of the signature on the Allonge attached to the Note at present.

Next, Defendants Deutsche Bank and Chase assert that they have provided to the Court in filings "evidence showing how and when DB obtained the Debtors' Note and its right to foreclose." *Id.* The Trustee strongly disputes such characterizations and notes that no such evidence has yet been reviewed by this Court. The Defendants appear to refer to their Motion for Summary Judgment, hearing on that motion has been continued numerous times and Plaintiff

has not yet filed his Response. Thus, it would be inappropriate for this Court to consider those pleadings at this time for any "factual assertions". But for the purposes of this Motion, the Trustee refers to portions of their contents in order to demonstrate to this Court that no such credible information about the location of the Note in the years since it was signed by the Debtors has been presented to the Trustee. The Trustee has NOT been provided with evidence that demonstrates the Note was in the possession of either Defendant Deutsche Bank or Chase or any of their "successors in interest" at the time that the Motion for Relief from Stay was filed nor at the time that the foreclosure was initiated. *See,* Huelsman Dec.

The only "evidence" of the physical transfer of the Note after it was signed by the Debtors which has been provided to the Trustee in discovery are the two form letters signed on behalf of Defendant Deutsche during the creation of the Trust. True and correct copies of these documents are attached to the Huelsman Dec. as Exhibit "D". The Trustee maintains that these documents are nothing more than form documents signed by persons without any specific knowledge of the physical location of the Notes. The Trustee takes this position because there has not been one single document produced by the Defendants which corroborates these blanket assertions about the supposed turnover of thousands of Promissory Notes. No copies of vault records have been produced; no copies of mailing records or delivery records showing the physical transfer of the Note (and the thousands of other notes also supposedly transferred) – no records at all except these form letters. *See,* Huelsman Dec. The Defendants have redacted the records attached to the Pooling and Servicing Agreement which detail the actual loans that were transferred to the Trust and the print is so small that they are unintelligible, but it is clear that there are literally thousands of loans allegedly included in the Trust. True and correct copies of the list of loans with redactions is attached to the Huelsman Dec. as Exhibit "E". Certainly, the

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 5

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

physical transfer of such a large number of Notes would have been recorded somewhere, and yet, no records have been produced. *Id.*

In support of its Motion for Summary Judgment, these Defendants have submitted two Declarations signed by Stacey Smith, an employee of Defendant Chase. Numerous copies of documents are attached to Ms. Smith's Declaration, but even though she testifies that she has personal knowledge about the location of the Note. At Paragraph 9-10, Ms. Smith states that Chase was in possession of the original Note and Deed of Trust from December 3, 2008 through November 10, 2009, when it was shipped to the offices of counsel in Seattle. Ms. Smith asserts that the Note was sent by FedEx overnight on November 10, 2009 but was not received until December 13, 2009. A true and correct copy of the Declaration of Stacey Smith filed by the Defendants in support of their Motion for Summary Judgment is attached to the Huelsman Dec. as Exhibit "F" ("Smith Dec."). However, Ms. Smith does not bother to tell the Court or anyone else how she can have this information, what documentation or records she utilized to provide such testimony and she chose not to provide the Court with any supporting documentation. *Id.* Surely there are records showing the physical location of the Note maintained by Defendants Chase and Deutsche Bank, and yet in spite of discovery requests which would require their production and numerous discovery conferences among counsel to resolve disputes, no such records have been produced by these Defendants to counsel for the Trustee and not to the Court. One has to wonder what those records show given the lengths to which these Defendants have gone to prevent them from being obtained by the Trustee. (The Trustee is filing his own Motion to Compel these records and others.)

Similarly, the Defendants have filed the Declaration of Ronaldo Reyes in support of their Motion for Summary Judgment, a Vice President for Defendant Deutsche. A true and correct

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 6

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

copy of Mr. Reyes' Declaration is attached to the Huelsman Dec. as Exhibit "G" ("Reyes Dec."). Mr. Reyes likewise provides this Court with his description of the physical location of the Note from "December 21, 2005 until December 2, 2008", contending that it was in the possession of Defendant Deutsche Bank. Reyes Dec.; ¶5. Mr. Reyes also does not provide this Court or the Trustee with a single document evidencing this purported physical transfer to Defendant Deutsche Bank, just 19 days after the Debtors signed the document here in Washington. *Id.* Mr. Reyes also does not bother to describe to this Court why the Note was allegedly transferred to Defendant Deutsche on December 21, 2005 when the Trust into which the loan was transferred was not created until February 1, 2006. In short, this Court cannot rely upon these unsubstantiated representations by Mr. Reyes in light of the fact that neither he nor these Defendants have provided the Trustee with any supporting documentation.

## **ARGUMENT AND ANALYSIS**

While it is unfortunate that the Trustee had to spend six pages of this pleading describing the facts which remain in dispute in this case, and the reasons that this Court cannot rely upon the representations made by Defendants Chase and JP Morgan, it was necessary in order to adequately respond to the Motion for Protective Order. The Trustee will go into the specific reasons that he has requested the testimony which these defendants seek to prohibit, it is also important for this Court to be aware of the documentation which these Defendants have yet to produce in spite of significant efforts by counsel to get the requisite information.

A. Standard for Obtaining a Protective Order.

A Protective Order may only be brought "for good cause, . . . to protect a party or person from *annoyance, embarrassment, oppression or undue burden or expense.*" FRCP 26(c)(1) (emphasis added). The movant must make a clear showing of a particular and specific need for

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 7

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

the order. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); Pearson v. Miller, 211 F.3d 57, 72 (3rd Cir. 2000). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test". Foltz v. State Farm Mut. Auto Ins. Co., 331 F.3d 1122, 1130 (9th Cir., 2003). The Defendants have not met their burden here, as their allegations of harm are disingenuous and unsubstantiated. These Defendants did not provide this Court with any testimony from the actual corporate entities describing the potential harm that they will suffer if forced to respond to the discovery requests, nor is there any testimony which supports the assertions of its counsel that they are unable to produce deponents who can answer these questions. (Dkt. 53 and 54).

Courts must still balance the interests in allowing discovery against the relative burdens to the parties to determine whether there was "good cause" for a protective. In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation, 669 F.2d 620, 623 (9th Cir. 1981); Wood v. McEwen, 644 F.2d 797, 801-802 (9th Cir. 1981).

It is important to note that the Discovery Requests and the Deposition Notice sent to Defendant Deutsche was directed to the specific defendant in this case - DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1. It was not directed to the parent company of Deutsche Bank National Trust Company nor to any other Deutsche Bank entities. It was directed to Deutsche Bank as the Trustee for this particular trust. Thus, all of these Defendants' arguments that the Trustee's questions are directed to "other Mortgage Loan Trusts" is incorrect. Mot.; 5:25. In discovery conferences, counsel for these Defendants has repeatedly asserted that he interprets the discovery requests to be directed to all of the Deutsche Bank entities, and even though the trustee has pointed out on numerous occasions that they are very clearly directed to "DEUTSCHE BANK NATIONAL TRUST

COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1" – the Defendant in this case – these Defendants continue in their position.

True and correct copies of the deposition notices served upon Defendants Deutsche Bank and Chase are attached to Ms. Huelsman's Declaration as Exhibits "H" and "I". True and correct copies of the Discovery Requests sent to Defendants Deutsche Bank and Chase are attached to Ms. Huelsman's Declaration as Exhibits "J" and "K". Note that a deposition is requested for the Corporate Representative of "DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1" and that discovery requests are directed at the same entity. *Id.*

**A.      DEFENDANTS' REFUSAL TO PROVIDE DISCOVERY AND DEPOSITION TESTIMONY ON THE FOLLOWING TOPICS**

Deposition Topic No. 2: "Any mortgage loan servicing and/or foreclosure involving [Deutsche Bank/Chase] and any of the named Defendants from January 1, 2007 through the present."

In further attempts at avoiding providing complete testimony regarding the claims at issue in this case and trying to make the topic appear broader than it is actually intended, the Defendants continue to assert that the requested testimony would involve discussion about other individual loan files, which would breach the privacy of other borrowers. Mot.; 6:12-13. First, there is no blanket prohibition on the Trustee obtaining information about other borrowers in the course of litigation included in the Federal Rules of Civil Procedure, if it were necessary. However, the Trustee has never contended that such information is necessary or even that questions about other persons' specific financial information will be asked. In fact, the Trustee has taken the exact opposite position. *See,* Huelsman Dec.

Second, concerns about the privacy of other borrowers' actual financial information

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 9

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

could be addressed through redaction of the actual information that needs protection, i.e., Social Security numbers, driver's license numbers, etc. Counsel for the Trustee has made clear during the numerous discovery conferences that she is not seeking to obtain the private financial information about other borrowers. Rather, the Trustee is seeking general information explaining the manner in which the Defendants all interact with each other and conduct the business of loan servicing, default servicing, bankruptcy review and/or filing motions for relief from stay, and the initiation and completion of foreclosure proceedings. All of this information is absolutely within the appropriate standard for deposition testimony in a case which involves all of these functions of the defendants. Counsel for the Trustee has made this clear to counsel for the Defendants in the numerous discovery conferences which occurred before the filing of this Motion, but the Defendants have still maintained that general testimony cannot be provided regarding the business relationship and operations of the Defendants in conducting business together cannot be discussed. *See,* Huelsman Dec. The Trustee maintains that this subject matter is not overly broad nor is it designed to lead to testimony which would require specific knowledge about other borrowers' financial information. These assertions by Defendants Deutsche Bank and Chase are nothing more than a red herring designed to distract the Court.

Because the Trustee is not seeking specific personal financial information about any other persons from these Defendants or from anyone else, he will not respond further to the case citations and arguments made by the Defendants. This information is not sought.

<u>Discovery designed at proving the elements of the Consumer Protection Act claims</u>.

To establish a private CPA claim, the plaintiff must generally establish the following five elements: (i) that the defendant committed an unfair or deceptive act or practice; (ii) that the act or practice occurred in the scope of trade or commerce; (iii) that the act or practice affects the

public interest; (iv) that the plaintiff suffered injury; and (v) that the injury was caused by the act or practice. *See,* Cashmere Valley Bank v. Brender, 116 P.3d 421 (2005); Jeckle v. Crotty, 120 Wn. App. 374; 85 P.3d 931 (2004); and Micro Enhancement Intern, Inc. v. Coopers & Lynbrand, *LLP,* 110 Wn. App. 412, 40 P.3d 1206 (2002). Whether a given practice is "unfair or deceptive" is a normally a question for the finder of fact. Burbo v. Harley C. Douglass, Inc., 125 Wn. App. 684, 106 P.3d 258 (2005); see also Guijosa v. Wal-Mart Stores, Inc., 144 Wash.2d 907, 32 P.3d 250 (2001). The Trustee will want to know about other incidents which may be similar to those complained of in this case in order to convince the Court that the Defendants' actions were "unfair or deceptive". In fact, this element of the CPA claim in this case is particularly important because Defendants Chase and Deutsche have already tried to convince this Court that it should alter the relief from stay order because they made a "mistake" by providing incorrect information to the Court. The Defendants will attempt to minimize and downplay their actions in this case, arguing that their actions were mere mistakes while they seek to prevent Plaintiff from discovering other similar incidents in order to prove a claim under the CPA. There is nothing in the CPA nor in the case law which would support such a conclusion.

In support of its position the Defendants cite to Shields v. Morgan Fin., Inc., 130 Wn.App. 750, 759 (2005), but intentionally mislead the Court in its holding. It is important to note that the Appellate Court in Shields affirmed that the issuance of a protective order in thar particular case was within the sound discretion of the trial court. As this Court is well aware, the standard for overturning a trial court's order on such matters is an "abuse of discretion" standard. Because these decisions are subject to such a high standard of review, it is highly unlikely that absent some particularly offensive conduct by the trial court, that the decision

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 11

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

would have been reversed.  Even more important than the fact that the Appellate Court did NOT issue a broad ruling to indicate that any time a party stipulated to the public interest element of a CPA claim, it was precluded from getting testimony about other victims, is the fact that Court did not even particularly focus on the "waiver" of the element in support of its decision. Shields, at 759.  The Court in Shields devoted much more time to analyzing the information that was provided to the plaintiff.  First, Ms. Shields had initially insisted upon taking the depositions of the CFO and the CCO of Long Beach Mortgage, but then backed off of that claim on appeal. Id.  Second, the Court noted that Long Beach "produced Shields' loan file and identified all the individuals who worked on the loan. The company produced a senior executive, Jay Weisbrod, to testify at a deposition regarding Long Beach's disclosure process and policies and to answer other relevant questions." Id., at 759.  The Court then focused on the fact that because of this other information and deponent provided, there was no need to depose "Long Beach's high level corporate executives", especially as it found that these executives had no "knowledge of specific facts pertaining to Shields' loan." Id.

Here, the Trustee has properly noted a deposition for corporate representatives.  *See,* Depositions Notices attached to the Huelsman Declaration.  The Trustee has not identified "high level corporate executives" for deposition, which the Court in Shields was appropriately prohibited in that particular case.  There is nothing in the language of that case nor would it be appropriate under the abuse of discretion standard to find that the Court intended its decision to be a blanket prohibition on obtaining information about other customers in similar situations in order to prove a CPA claim, so long as a defendant stipulates only to the public interest element. This would be convenient for Defendants – the totality of their bad acts and identification of those harmed by their bad acts could remain hidden so that when the other elements of a CPA

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 12

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

are being proved by a plaintiff, they can maintain leave the trier of fact with the false impression that no one else had been harmed by the unfair or deceptive acts. That is not the proper purpose for a protective order.

In addition, the Court in Shields noted that the Long Beach Mortgage had identified "all the individuals who worked on the loan." Id. In this case, these Defendants have not identified a single person in discovery responses who has knowledge about the claims being made in this case nor the documents which form the evidence in this case. *See,* Huelsman Dec. This and other discovery abuses will be the subject of Plaintiff's Motion to Compel filed separately, but it is important to note that these Defendants in their discovery responses did not even identify their own employees who signed documents included in the records produced as "persons with knowledge" about the claims made in this case. Id. In fact, Defendant Chase, through its counsel, contended during discovery disputes that Elizabeth Boulton, who signed the "Lost Assignment Affidavit" in 2007 was not ever an employee of Chase and that it had no knowledge of her whereabouts. Id. In fact, counsel for the Trustee was just informed yesterday, after discovering that Ms. Boulton had signed a recorded document which is being used in another case as an employee of Chase, that she was an employee of Chase for five months after it acquired Washington Mutual. Id. Defendants Deutsche Bank and Chase did not identify their employees who signed documents the certifying that Defendant Deutsche Bank had received the Notes in connection with the creation of the Trust, including Ronaldo Reyes who is now identified as the 30(b)(6) deponent for Defendant Deutsche Bank, and they did not identify employees who have provided testimony to this Court in declarations. In short, these Defendants have not identified a single person with knowledge about the claims being made in this case, except to advise counsel for the Trustee in the last couple weeks that Mr. Reyes will be

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 13

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

the deponent. Id. This is a far cry from the facts of Shields and again, that case did nothing more than determine that the trial court had not abused its discretion.

Similarly, Defendants' citation to Morgan v. Peacehealth, Inc., 101 Wn.App. 750 (2000) is inapposite. The Morgan case involved a podiatrist who contested his firing by a hospital who made numerous allegations which included a CPA claim. The entirety of the decision was predicated upon the rights and claims available to the plaintiff under the Health Care Quality Improvement Act, which provided statutory immunity, something which does not exist in this case. Further, the Defendants did not provide the Court with the entirety of the quote from the opinion. When the entire paragraph is read, its meaning is clearly much different than that which the Defendants have asserted:

> The unanswered discovery that Morgan sought in his first and second requests for production and interrogatories was not likely to raise a genuine issue of material fact because it pertained primarily to information concerning other health care providers. This information was **irrelevant because the inquiry under the HCQIA immunity issue is whether the hospital met the standards in its review of Morgan and not how that review compares with other investigations or discipline.** Nor is the competency of other doctors relevant to whether the hospital conducted a reasonable review of Morgan.

Morgan, at 775 (emphasis added - bold). (The underlined portions are those parts of the paragraph quoted by the Defendants.) The entirety of the quote makes clear that the Court was considering the discovery standards appropriate under the HCQIA which has proof requirements which differ materially from the CPA. Nowhere in this opinion, except in listing the claims made by Mr. Morgan, does this opinion even motion the CPA. The Defendants have clearly tried to mislead this Court by deleting the most important part of the quoted sentence, "**under the HCQIA immunity issue**". Id.

As this Court has already been made aware, Defendant Chase has been the subject of numerous sanction orders and/or settlement of adversary proceedings in the United States

Bankruptcy Court, Southern District of New York as a result of engaging in similar acts. True and correct copies of some of the pleadings in those cases are attached to the Huelsman Declaration as Exhibits "L" and "M". Because Defendant Chase was caught filing motions for relief from stay which were unsupported, it filed a letter with that Court in January, 2009 promising to correct its practices in that Court and retaining a new lawyer to oversee its filings in the Southern District of New York. Id. Just a few days after filing that letter with that Court, the Defendants were engaged in similar acts here in Washington, where they presented the Bankruptcy Court with inaccurate and untruthful information in support of a motion for relief from stay. Id. The Bankruptcy Court is awaiting additional briefing and evidence from the Debtors' counsel in that case and from the United States Trustee's Office before deciding on the issue of sanctions. Id. It is because of this repeated behavior, promises to correct the behavior and its continuation nevertheless, even in the face of severe disapproval by the Courts, that it is important for the Trustee to obtain information about other "unfair and deceptive" acts by these Defendants.

Requests for Information regarding other regulatory or administrative agency actions, orders and/or investigations.

Similar to the stated objections for the information sought in order to support the CPA claims, the Defendants have refused to provide any information about any other investigations into their business operations. First, as to Defendant Deutsche Bank, because the request would only pertain to its role as trustee of this particular pooled trust because that is to whom it is directed with particularity, the request for such information cannot be overly broad. The Trustee has asked for information about any investigation, and/or regulatory or administrative action relating solely to that trust. Since it is only one entity – the trust – it is not a "fishing

PLAINTIFF'S RESPONSE TO DEF. DEUTSCHE
BANK AND JP MORGAN CHASE'S MOTION FOR
PROTECTIVE ORDER - 15

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

expedition", unless perhaps there have been so many investigations and/or regulatory actions taken against Defendant Deutsche Bank as regards this one trust that it becomes burdensome, but that seems highly unlikely. Certainly, there is absolutely no evidence presented to this Court to support the assertion that such a request is overly broad. No officer or even an agent of Defendant Deutsche Bank has provided testimony to this Court to explain why providing such documentation would be particularly burdensome. There is no reason to believe in the age of computers, servers and databases with capacity beyond human imagination that someone at Defendant Deutsche Bank could not conduct a quick search of its records to ascertain just how many records there are of such investigations and/or regulatory and administrative actions. And yet, such specific information about why the request is overly broad is entirely missing.

  Although Defendant Chase in this case is the larger corporate parent because no subsidiary or specific "unit" in its corporate structure has been identified as the correct alternate party in this case, there is still no excuse for why it cannot provide testimony to support its assertion that it would be too cumbersome and overly burdensome to print such a document. However, the cases cited by the Defendants do not lend support to its position. First the case of Cuomo v. The Clearing House Assoc., 129 S.Ct. 2710, 174 L.Ed.2d 464 (2009) is focused solely on the issue of whether the Comptroller's regulation purporting to pre-empt state law enforcement was an unreasonable interpretation of the National Banking Act. There was absolutely not a single word in the ruling which would lend support to the Defendants' assertion that the Supreme Court was making any findings as regards "fishing expeditions". The quote cited repeatedly by the Defendants, "fishing expeditions or an undirected rummaging through . . . records for evidence of some unknown wrongdoing" is taken completely out of context. Mot.; 8:19-21. The Court in Cuomo was solely concerned with an analysis of the state's rights and

whether the anticipated state action constituted visitation powers in the opinion. The "fishing" quote on page 2719 reads:

> Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through bank books and records for evidence of some unknown wrongdoing. In New York, civil discovery is far more limited than the full range of "visitorial powers" that may be exercised by a sovereign.

Cuomo at 2719. There is nothing in this language which applies in this case. The citation to this case is entirely irrelevant.

Just as with the other cases cited by the Defendants, including Wyeth v. Impax Labs, 248 F.R.D. 169 (D. Del. 2006) have no particular applicability to the case before this Court. In each of the cases, the Court made a particular finding based upon the facts and claims of that case, and none of the cases are analogous nor did they involve CPA types claims.

Under FRCP 26, "good cause" must exist for issuance of a protective order and the following factors should be considered:

> Whether the information is sought for a legitimate purpose;
> Whether it will violate any privacy interest;
> Whether it will cause embarrassment;
> Whether it is important to public health or safety;
> Whether sharing of information among litigants will promote fairness and efficiency in litigation;
> Whether the party seeking the protective order is a public official;
> Whether the case involves issues of public importance.

Pansy v. Borough of Stroundsburg, 23 F.3d 772, 787-791 (3rd Cir. 1994). Here, Plaintiff maintains that all of the information sought is for a legitimate purpose; it does not violate a privacy interest nor will it cause embarrassment (as there is no evidence of this element); and that the sharing of the information will promote efficiency in the litigation. More importantly, all of the information being sought in this case involves matter of

public importance, which is why Plaintiff has brought a claim under the CPA. The Trustee maintains that the Defendants are injuring other Debtors by filing frivolous and/or incorrect motions for relief from stay and/or bringing foreclosures when they do not have the legal authority to do so. Therefore, the information sought must be obtained.

## CONCLUSION

For all of the above-stated reasons, the Trustee maintains that the Motion for Protective Order should be denied in its entirety.

Dated: This 26th day of March 2010.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

/s/ Melissa A. Huelsman
Melissa A. Huelsman, WSBA No.30935
Attorney for Plaintiff