The Honorable Karen A. Overstreet
Chapter 7 (Adversary)
Hearing Date: June 18, 2010
Hearing Time: 9:30 a.m.
Hearing Location: 700 Stewart St.,
Seattle – Room 7206
Response Date: June 11, 2010

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re<br><br>STEVEN C. BATEMAN and VIRGINIA T. LEE,<br><br>        Debtor.<br>_____ | Case No. 07-13346-KAO |
| EDMUND J. WOOD, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Steven C. Bateman and Virginia T. Lee,<br><br>        Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1; LONG BEACH MORTGAGE COMPANY; WASHINGTON MUTUAL BANK, as successor-in-interest to Long Beach Mortgage Company by operation of law and/or as its attorney in fact; JP MORGAN CHASE BANK, N.A.; LENDER'S PROCESSING SERVICES, INC.; PLATINUM HOMES, INC., NORTHWEST TRUSTEE SERVICES, INC.,<br><br>        Defendants. | Adversary Case No. 09-1345-KAO<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT........................................... 1

II.     STATEMENT OF FACTS............................................................................ 2

    A.  The Funding and Origination of Debtors' Loan. ........................................ 2

    B.  Platinum Transfers its Interests in the Note and Deed of Trust to Long Beach ........... 3

    C.  Long Beach Transfers the Note and Deed of Trust to Deutsche Bank......................... 4

    D.  The Relationship Among Long Beach, WaMu, Chase, and DB. ................................. 6

    E.  Debtors' Default, Rejected Sale, Bankruptcy, and Decision to Move. ....................... 7

    F.  Debtors Meet The Trustee, Who Bars Them From Selling the Residence. .................. 8

    G.  DB Seeks Stay Relief And Decides To Initiate Foreclosure. ................................... 9

    H.  Trustee Files His Adversary Complaint. ................................................................... 9

III.    STANDARD OF REVIEW........................................................................ 10

IV.     ARGUMENT ............................................................................................ 10

    A.  Bankruptcy Court Filings Cannot Form the Basis of Liability. ................................. 10

    B.  Chase is Not Liable for WaMu Conduct. ................................................................ 13

    C.  DB Is Entitled to Enforce the Note And May Foreclose on the Deed of Trust.......... 14

        1.  Defendant DB is the Note Holder. ......................................................... 14

        2.  DB Has the Original Note and Has Rights of a Holder...................................... 15

        3.  The Note and Allonge Signatures Are Authentic and Authorized. .................... 16

    D.  There Is No Claim for Wrongful Institution of Foreclosure, and Debtors Cannot Show a DTA Violation or Prejudice in Any Event. .................................................... 16

    E.  Trustee Cannot Establish *Any* Element of His Slander of Title Claim....................... 19

    F.  Trustee's CPA Claim Fails as a Matter of Law.......................................................... 19

        1.  This Court Should Not be the First to Permit Affirmative Claims Based on A Perceived Lack of Authority Under the DTA. ................................... 20

        2.  Plaintiff Cannot Establish an Unfair Act or Practice......................................... 22

        3.  Chase and DB's Court Filings Cannot Form the Basis of a CPA Claim Because They Did Not Occur in Trade or Commerce.......................................... 26

        4.  Plaintiff Cannot Establish Injury Caused by Chase or DB................................. 26

    G.  Plaintiff's FDCPA Claims Fail as a Matter of Law.................................................... 28

    H.  Trustee's Fiduciary Duty Claim Fails as a Matter of Law. ....................................... 29

V.      CONCLUSION ....................................................................................... 30

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - i
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Alvarado v. Microsoft Corp.*,
2010 WL 715455 (W.D. Wash. 2010) .................................................................. 23, 24

*Bain v. Metro. Mortg. Group*,
2010 WL 891585 (W.D. Wash. 2010) (Coughenour, J.) ........................................ 21

*Barnett v. TD Escrow Serv.*,
2005 WL 1838623 (W.D. Wash. 2005) .................................................................. 21

*In re Bassett*,
255 B.R. 747 (9th Cir. BAP 2000), *rev'd in part on other grounds*, 285 F.3d 882
(9th Cir.2002) .......................................................................................................... 12

*In re Brazier Forest Prod. Inc.*,
921 F.2d 221 (9th Cir. 1990) ................................................................................... 10

*Brooks v. Citibank NA*,
345 Fed. Appx. 260 (9th Cir. 2009) ........................................................................ 28

*Browne v. Avvo*,
525 F. Supp. 2d 1249 (W.D. Wash. 2007) .............................................................. 26

*Carpenter v. Longan*,
83 U.S. 271 (1872) ..................................................................................................... 3

*Cassese v. Wash. Mut.*,
2008 WL 7022845 (E.D. N.Y. 2008) ...................................................................... 13

*Castaneda v. Saxon Mortgage Serv. Inc.*,
___ F. Supp.2d ___, 2009 WL 4640673 (N.D. Cal. Dec. 3, 2009) ........................ 30

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................. 10

*In re Chausse*,
399 B.R. 225 (9th Cir. BAP 2008) .................................................................. *passim*

*Commercial Dev. Co. v. Abitibi-Consol.*,
2008 WL 2856889 (W.D. Wash. 2008) .................................................................. 19

*FMC Tech. v. Edwards*,
464 F. Supp. 2d 1063 (W.D. Wash. 2006) .............................................................. 12

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – ii
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Fong v. Prof'l Foreclosure Corp.*,
  2005 WL 3134059 (W.D. Wash. 2005) ................................................................. 29

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988) ...................................................................... 28

*Gentsch v. Ownit Mortgage Solutions*,
  No. CV F 09-0649, 2009 WL 1390843 (E.D. Cal. 2009) ...................................... 28

*Gonzales v. Parks*,
  830 F.2d 1033 (9th Cir. 1987) ............................................................................... 12

*Grealish v. Wash. Mut. Bank*,
  2009 WL 2170044 (D. Utah 2009) ......................................................................... 13

*Heinemann v. Jim Walter Homes, Inc.*,
  47 F. Supp. 2d 716 (D. W. Va. 1998) ..................................................................... 29

*Henderson v. GMAC Mortgage*,
  2008 WL 1733265 (W.D. Wash. 2008), *aff'd* 347 Fed. Appx. 299 (2009) ............ 21

*Hulse v. Ocwen Federal Bank, FSB*,
  195 F. Supp. 2d 1188 (D. Or. 2002) ....................................................................... 29

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ................................................................................................ 12

*IndyMac Venture v. Silver Creek Crossing*,
  2010 WL 1138391 (W.D. Wash. 2010) ................................................................... 21

*In re Jacobson*,
  402 B.R. 359 (Bankr. W.D. Wash. 2009) .................................................................. 3

*Kaiser Cement Corp. v. Fischbach & Moore, Inc.*,
  793 F.2d 1100 (9th Cir. 1986) ............................................................................... 10

*In re Kile*,
  415 B.R. 723 (Bankr. D. Ariz. 2009) ........................................................................ 9

*Leisure Time Sports v. Wolfe*,
  194 B.R. 859 (9th Cir. BAP 1996) ............................................................................ 3

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ................................................................................................ 10

*Marks v. Ocwen Loan Serv.*,
  2009 WL 975792 (N.D. Cal. 2009) ......................................................................... 30

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – iii
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Medialdea v. Law Office of Evan Loeffler*,
  2009 WL 1767185 (W.D. Wash. 2009) (Lasnik, C.J.)..............................................26

*In re Metropolitan Sec. Litig.*,
  532 F. Supp. 2d 1260 (E.D. Wash. 2007)..............................................................23

*In re Miles*,
  294 B.R. 756 (9th Cir. BAP 2003), *aff'd* 430 F.3d 1083 (9th Cir. 2005) ...........12

*Miller v. NW Trustee Serv.*,
  2005 WL 1711131 (E.D. Wash. 2005) ...........................................................1, 29

*Minnick v. Clearwire US LLC*,
  _ F. Supp.2d _, 2010 WL 431879 (W.D. Wash. 2010) ........................................24

*Molina v. Wash. Mut. Bank*,
  2010 WL 431439 (S.D. Cal. 2010)........................................................................13

*Moon v. GMAC*,
  2009 WL 3185596 (W.D. Wash. 2009) .................................................................22

*MSR Exploration, Ltd. v. Meridian Oil, Inc.*,
  74 F.3d 910 (9th Cir. 1996) ..................................................................................12

*In re Pariseau*,
  395 B.R. 492 (Bankr. M.D. Fla. 2008) .................................................................12

*Payne v. Sec. Sav. & Loan Assoc.*,
  924 F.2d 109 (7th Cir. 1991) ................................................................................13

*Smale v. Cellco P'Ship*,
  547 F. Supp. 2d 1181 (W.D. Wash. 2008) ...........................................................23

*Soundview Ins. Agency v. Berjac of Portland*,
  2010 WL 770966 (W.D. Wash. 2010) ..................................................................26

*T.W. Elect. Serv. v. Pac. Elec. Contractors Assoc.*,
  809 F.2d 626 (9th Cir. 1987) ................................................................................10

*Towe v. Martinson*,
  195 B.R. 137 (D. Mont. 1996)................................................................................9

*In re United Home Loans*,
  71 B.R. 885 (W.D. Wash. 1987), *aff'd* 876 F.2d 897 (9th Cir. 1989)...................18

*Universal Life Church v. GMAC Mortg.*,
  2007 WL 1185861 (W.D. Wash. 2007) ................................................................21

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – iv
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Vawter v. Quality Loan Serv.*,
  _ F. Supp. 2d _, 2010 WL 1629355 (W.D. Wash. 2010) ................................................*passim*

*Watkins v. Peterson Enter., Inc.*,
  57 F. Supp. 2d 1101 (E.D. Wash. 1999) .............................................................................23

*Westpark Ass'n. v. Butterfield S&L Ass'n*,
  60 F.3d 1452 (9th Cir. 1995) ...................................................................................... 1, 13

*White v. Homefield Fin., Inc.*,
  545 F. Supp. 2d 1159 (W.D. Wash. 2008) ........................................................................13

*In re Williams*,
  392 B.R. 882 (Bankr. M.D. Fla. 2008) .......................................................................12, 26

*Yeomalakis v. FDIC*,
  562 F.3d 56 (1st Cir. 2009) ..............................................................................................13

**STATE CASES**

*Brown v. Household Realty Corp.*,
  146 Wn. App. 157 (2008) ..................................................................................................22

*Brown v. Safeway Stores, Inc.*,
  94 Wn.2d 359 (1980) ........................................................................................................19

*CHD, Inc. v. Boyles*,
  138 Wn. App. 131 (2007) ..................................................................................................18

*Dexter v. Spokane County Health Dist.*,
  76 Wn. App. 372 (1994) ....................................................................................................12

*Fidelity & Deposit v. Ticor*,
  88 Wn. App. 64 (1997) ........................................................................................................3

*Guarino v. Interactive Objects, Inc.*,
  122 Wn. App. 95 (2004) ....................................................................................................25

*Guijosa v. v. Wal-Mart Stores*,
  144 Wn.2d 907 (2001) ..........................................................................................12, 13, 26

*Hangman Ridge Training Stables, v. Safeco Title Ins. Co.*,
  105 Wn.2d 778 (1986) ............................................................................................1, 20, 23, 24

*Hardcastle v. Greenwood S&L Ass'n*,
  9 Wn. App. 884 (1973) ......................................................................................................20

*Holiday Resort Cmty. Ass'n v. Echo Lake Assoc., LLC*,
  134 Wn. App. 210 (2006) ..................................................................................................25

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – v
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Indoor Billboard Wash., Inc. v. Integra Telecom of Wash.*,
  162 Wn.2d 59 (2007) ........................................................................ 23, 28

*Koegel v. Prudential Mut. Sav. Bank*,
  51 Wn. App. 108 (1988) ............................................................ 17, 18, 20

*Leingang v. Pierce County Med. Bureau, Inc.*,
  131 Wn.2d 133 (1997) ............................................................................ 25

*McNeal v. Allen*,
  95 Wn.2d 265 (1980) ............................................................................. 12

*Miller v. U.S. Bank of Wash., N.A.*,
  72 Wn. App. 416 (1994) ................................................................. 1, 3, 30

*Mitchell Bank v. Schanke*,
  676 N.W.2d 849 (Wis. 2004) ................................................................. 29

*Nguyen v. Doak Homes, Inc.*,
  140 Wn. App. 726, 167 P.3d 1162 (2007) ............................................. 25

*Peoples Nat'l Bank of Wash. v. Ostrander*,
  6 Wn. App. 28 (1971) ............................................................................ 21

*Rorvig v. Douglas*,
  123 Wn.2d 854 (1994) ............................................................................ 19

*Saunders v. Lloyd's of London*,
  113 Wn.2d 330 (1989) ............................................................................ 23

*Schmidt v. Cornerstone Inv., Inc.*,
  115 Wn.2d 148 (1990) ............................................................................ 13

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
  64 Wn. App. 553 (1992) ......................................................................... 27

*State v. Schwab*,
  103 Wn.2d 542, 693 P.2d 108 (1985) ............................................... 21, 22

*Udall v. T.D. Escrow Serv.*,
  159 Wn.2d 903 (2007) ....................................................................... 18, 19

*Udall v. TD Escrow Serv.*,
  132 Wn. App. 290 (2006), *rev'd other grounds*, 159 Wn.2d 903 (2007) ........................ 19, 21

*Young v. Whidbey Island Bd. Of Realtors*,
  96 Wn.2d 729 (1982) ............................................................................. 27

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – vi
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**FEDERAL STATUTES**

15 U.S.C. § 1692(e) ................................................................................ 28

15 U.S.C. § 1692a(6) ......................................................................... 28, 29

15 U.S.C. § 1692k(d) .............................................................................. 28

**STATE STATUTES**

RCW 61.24.040 ................................................................... 7, 8, 17, 20

RCW 61.24.100 ............................................................................ 18, 27

RCW 61.24.127 ...................................................................................... 22

RCW 61.24.130 ............................................................................... 17, 20

RCW 62A.1-201(20) ............................................................................. 14

RCW 62A.3-203 ................................................................................... 15

RCW 62A.3-205 ................................................................................... 14

RCW 62A.3-301 ........................................................................ 1, 14, 15

RCW 62A.3-308 ................................................................................... 16

RCW 64.21.127 ..................................................................................... 21

RCW 64.21.135 ..................................................................................... 21

**RULES**

Fed. R. Civ. P. 8(a)(2) .......................................................................... 28

Fed. R. Civ. P. 12 ................................................................................. 22

Fed. R. Civ. P. 56(c) ............................................................................ 10

**SECONDARY SOURCES**

6 COLLIER ON BANKR. ¶ 704.04[2] (15th Ed. Rev. 2009) ...................... 9

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – vii
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

There is *one* factual issue to be resolved here: was Defendant Deutsche Bank National Trust Company ("DB") the holder of Debtors' Note, such that it could initiate foreclosure? The evidence shows DB is (and was) the Note holder. Based on Court filings he did not oppose, Mr. Wood ("Plaintiff/Trustee") speculates that DB *might* not hold the Note. From that premise he seeks to use Court filings as a predicate for treble damages and fees under the Consumer Protection Act ("CPA") and affirmative relief under the Deed of Trust Act ("DTA"), against Defendants DB and JPMorgan Chase Bank NA ("Chase"). Tellingly, Trustee refuses to identify specific unfair conduct, suggesting only that the "totality of the allegations" support his claims. Against this edifice of agnostic imprecision, Defendants ask for summary judgment because:

*First*, the Bankruptcy Code preempts Trustee's state law claims, and court filings cannot create new liability in any event. *In re Chausse*, 399 B.R. 225, 234 (9th Cir. BAP 2008).

*Second*, Chase assumed no liability from the FDIC for damages stemming from WaMu's foreclosure initiation. *Westpark Ass'n. v. Butterfield S&L Ass'n*, 60 F.3d 1452 (9th Cir. 1995).

*Third***,** Defendants satisfy all requirements to enforce the Note, and by extension, foreclose on the Deed of Trust. *See* RCW 62A.3-301.

*Fourth*, no claim for foreclosure initiation exists, and absent prejudice, DTA claims fail anyway. *Vawter v. Quality Loan Serv.*, _ F. Supp. 2d _, 2010 WL 1629355 (W.D. Wash. 2010).

*Fifth***,** this Court has rejected the slander of title claim based on lack of a pending sale or negotiations (or offers at foreclosure initiation) and should do so again. AP Dkt. 55 at 5:18-6:4.

*Sixth*, Plaintiff's CPA claim fails because it is preempted and because he cannot show an unfair practice, conduct occurring in trade or commerce, or injury caused by DB or Chase. *Hangman Ridge Training Stables, v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

*Seventh*, Plaintiff's FDCPA claims are preempted and fail because Defendants do not seek to collect a debt. *Miller v. NW Trustee Serv.,* 2005 WL 1711131, *3 (E.D. Wash. 2005).

*Eighth*, Defendants have no fiduciary or "quasi-fiduciary" relationship with Debtors or Plaintiff. *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 426 (1994).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## II.    STATEMENT OF FACTS

Trustee's Second Amended Complaint ("SAC"), AP Dkt. 6, is a broad-based attack on evidence submitted in connection with Court filings—a Proof of Claim which Debtors withdrew objection to, and an unopposed Stay Relief Motion—which are immune from civil liability under long standing federal and state law.  But rather than oppose the Proof of Claim or Stay Relief Motion, Trustee has instead filed an adversary Complaint.  Reading the Complaint, the Court might understandably think that Plaintiff seeks to vacate the Order granting relief from stay, that Plaintiff seeks to void DB' lien, or that Plaintiff opposes DB's claim.  But Plaintiff does **not** seek that relief.  Debtors withdrew their Proof of Claim objection, *see* Dkt. 39, and Trustee confirms he does **not** plead lien avoidance as a cause of action here.  Declaration of Fred B. Burnside ("Burnside Dec."), Ex. A at 41:14-42:4.

Rather, based on speculation—and the fact that Plaintiff did not know of an indorsement on the reverse side of the Note—Plaintiff seeks affirmative relief here as an afterthought.  Once one penetrates the fog of the irrelevant, implausible, and unsupported allegations, there is no evidence supporting his affirmative claims.  Indeed, this lawsuit has nothing to do with Debtors —who do not dispute default or that the Note holder may enforce the Deed of Trust.

### A.    The Funding and Origination of Debtors' Loan.

**Platinum Homes Originates Debtors' Loan for Long Beach's Purchase.**  In November 2005, Defendant Long Beach Mortgage Company ("Long Beach") received a "Correspondent Loan Submission" request from Homeloan Advisors.com—d/b/a Defendant Platinum Homes, Inc. (collectively, "Platinum")—seeking a refinance loan for Debtors Steven Bateman and Virginia Lee ("Debtors").  *See* Second Declaration of Stacey Smith ("2nd Smith Dec.") ¶ 7 & Ex. G at 525.  Platinum was a mortgage banker with a line of credit through a third-party "warehouse lender" that allowed it to close loans in its own name that were underwritten and approved by Long Beach.  Second Declaration of Jeffery Pittman ("2nd Pittman Dec.") ¶ 2.  (This is referred to as "correspondent" lending in the mortgage industry.)  Long Beach's underwriting department approved Debtors' loan, and Debtors executed their Note and Deed of Trust on December 3, 2005, listing Platinum as lender.  2nd Smith Dec., Exs. A-B.  It was

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

understood that Long Beach would purchase Debtors' Note, and Platinum would not have funded the loan otherwise. 2nd Pittman Dec. ¶ 2; Burnside Dec., Ex. F at 35:8-39:1; 92:1-15.

**B.      Platinum Transfers its Interests in the Note and Deed of Trust to Long Beach**

**Transfer of the Note.**      Attached to the Note is the original Allonge containing the indorsement by Platinum (through Jeffery Pittman, President of Platinum) to Long Beach. 2nd Smith Dec., Ex. A. Mr. Pittman has reviewed the Note and Allonge bearing his signature and verified that the signature on the Allonge attached to the Note is his authorized and authentic signature, and that his intention in signing the Allonge was to transfer all interests Platinum had in Debtors' Note to Long Beach. 2nd Pittman Dec. ¶¶ 1-6, Ex. A.[1]  On December 13, 2005, Long Beach received the loan documents from Platinum's warehouse lender (First Collateral Services, Inc.) for review before purchasing the loan from Platinum. 2nd Smith Dec. ¶ 7 & Ex. G at 266-67, 309. On December 14, 2005, as part of the document review process, Long Beach employee Dan Martin verified receipt of the original Note, endorsed by Platinum to Long Beach. *Id.* at 451, 521. In creating the official "Collateral" file of original "core" loan documents for delivery to DB's vault, Long Beach employee Cory Griffin also verified that the file contained the original Note, and the Allonge endorsing the Note to Long Beach. *Id.* at 369. On December 16, 2005, Long Beach completed its review and purchased Debtors' loan by wiring funds to the account designated by Platinum's lender (First Collateral). *Id.* at 151, 371-72.

**Transfer of the Deed of Trust.**      Under settled Washington law, the "security follows the debt," such that the transfer of the Note from Platinum to Long Beach effectively and necessarily transferred the Deed of Trust from Platinum to Long Beach.[2]  Nevertheless, Mr. Pittman, as Platinum's President, testified that Platinum's conduct in delivering the Deed of Trust to Long

---

[1] When Chase acquired WaMu's assets in 2008, it acquired WaMu's loan-records database. Hindman Dec., AP Dkt. 115, ¶ 3. The database exists so that each record is viewable without having to obtain possession of the original document. *Id.* Each document is imaged in sequence as received from the original loan file. *Id.* The original signed loan documents (like the Deed of Trust and Note) are contained in what is known as the "Collateral Wallet," which is stored in a secure location. *Id.* For security purposes (to prevent the loss of the original loan documents), the Collateral Wallet is only removed from its secure location if absolutely necessary. *Id.* The imaged database— but *not* the Collateral Wallet—contains a duplicate Allonge, prepared by Platinum Homes. *Id.* ¶ 5. There is no evidence that this Allonge was ever attached to Debtors' original Note, or that the original version of this Allonge was received. *Id.* This Allonge has *never* been filed with the Recorder's Office or in any other out-of-court filing.

[2] *Fidelity & Deposit v. Ticor*, 88 Wn. App. 64, 69 (1997); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) ("transfer of the note carries with it the security"); *Carpenter v. Longan*, 83 U.S. 271, 275 (1872); *Leisure Time Sports v. Wolfe*, 194 B.R. 859, 861 (9th Cir. BAP 1996) ("The security interest follows the debt.").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 3
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Beach was with the intention and purpose of assigning all interests it had in the Note and Deed of Trust to Long Beach. Burnside Dec., Ex. E at 72:19-73:5; 107:13-108:12; 2nd Pittman Dec. ¶ 6. Although a "Corporation Assignment of Deed of Trust" was prepared by Platinum to show the Deed of Trust transfer to Long Beach, Mr. Pittman did not sign that document (see below). That failure has no effect here, however, as the security follows the debt.

**The Loan Origination Database Contains Documents Not Signed by Mr. Pittman.** Trustee will undoubtedly make much of the fact that the database Chase acquired from WaMu contains copies (not originals) of two imaged records from Debtors' loan that purport to bear Mr. Pittman's signature, but that we now know were *not* signed by Mr. Pittman: (1) a duplicate Allonge, indorsing the Note from Platinum to Long Beach; and (2) a Corporation Assignment Deed of Trust (assigning the Deed of Trust from Platinum to Long Beach). Chase and DB do *not* rely on either document. The duplicate Allonge was never attached to Debtors' Note; all evidence shows that the Allonge Mr. Pittman signed is (and at all times has been) attached to Debtors' Note, and if multiple Allonges had been attached to the Note, Defendants' records would reflect that fact (and they do not). Burnside Dec. ¶ 4, Ex. E at 58:2-23; 90:16-91:25, Ex. I; Second Declaration of Ronaldo Reyes ("2nd Reyes Dec.") ¶ 5; Smith Dec. ¶¶ 2, 8, Exs. A, H-I. Because the security (Deed of Trust) follows the debt, Platinum's Note transfer to Defendant Long Beach also gave Long Beach all rights under the Deed of Trust.

**C.    Long Beach Transfers the Note and Deed of Trust to Deutsche Bank.**

After acquiring Debtors' Note, Long Beach added an indorsement on the reverse side of the second page, which reads "Pay to the order of _____." 2nd Reyes Dec., Ex. A. Trustee was *unaware* of this indorsement, and appears to base his claim that DB lacks standing to foreclose on the mistaken belief that "[t]here has not been an endorsement of the Note by anyone from Defendant Long Beach and therefore the Note is not payable to anyone other than Long Beach." SAC, AP Dkt. 6, ¶ 3.14, 13:18-19. Despite seeing Long Beach's blank indorsement, Trustee still refuses to dismiss this case. The following is a visual history of ownership and transfer of the Note from Platinum to Long Beach, and Long Beach (in blank) to DB:

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 4
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Loan Number: 3903246

# NOTE

DECEMBER 2, 2005                                    COSTA MESA #69707134 CALIFORNIA
[Date]                                                        [City]                    [State]

3529 SW 98TH STREET, SEATTLE, WASHINGTON 98126
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 330,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is PLATINUM HOMES INC, A CORPORATION

***

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
STEVEN C. BATEMAN            -Borrower        VIRGINIA LEE                -Borrower

..............................................................................................

**ALLONGE**

**LOAN #:** 3903246

**Borrower(s):** STEVEN C. BATEMAN, VIRGINIA LEE

**Property Address:** 3529 SW 98TH STREET, SEATTLE, WASHINGTON 98126

**Principal Balance:** $330,000.00

**Loan Date:** DECEMBER 2, 2005

**PAY TO THE ORDER OF**

LONG BEACH MORTGAGE COMPANY
LONG BEACH MORTGAGE
Without Recourse

Company Name: PLATINUM HOMES INC

By: _____ Jeffery Pittman _____ President
(Name)                                    (Title)

..............................................................................................

Pay to the order of
Without Recourse
Long Beach Mortgage Company
Jesse Almanza, Vice President
Kimberly A. Smith, Officer

*See* 2nd Reyes Dec. ¶¶ 2, 5 & Ex. A at A-2, A-3, A-4, A-5.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 5
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DB received the original Note (endorsed in blank) and Allonge on December 21, 2005, in connection with the submission of Debtors' loan as part of the Long Beach Mortgage Loan Trust 2006-1 (the "Trust")—for which DB was eventually Trustee. *See id.* ¶ 5. DB has remained the Note holder from December 21, 2005 to the present (though it delivered the Note to Chase in December 2008—again with one Allonge—and Chase in turn shipped the Note to undersigned counsel in November 2009). *Id.* & Ex. E; 2nd Smith Dec. ¶ 8 Ex. I; Burnside Dec. ¶¶ 2, 4, Ex. D at 27:4-16; 47:1-48:24. Likewise, per the Pooling and Servicing Agreement ("PSA") governing the Trust, Long Beach executed an Assignment of Deed of Trust on December 20, 2005 and delivered the assignment, Note and Allonge, and Deed of Trust to DB on December 21, 2005. 2nd Smith Dec. Ex. C; 2nd Reyes Dec. ¶ 5, Ex. C § 2.01.[3]

### D. The Relationship Among Long Beach, WaMu, Chase, and DB.

The Trust (containing Debtors' loan) is governed by the PSA, under which DB was designated as Trustee and Long Beach was the original Master Servicer. 2nd Reyes Dec., Ex. C. Under the PSA, Long Beach (as Master Servicer) was authorized to initiate foreclosure proceedings against defaulted borrowers with loans in the Trust. *Id.* §§ 3.01, 3.16(a). In 2006, Long Beach merged into Washington Mutual Bank, FA ("WaMu") and ceased to exist as a separate legal entity; as a result, WaMu assumed Long Beach's servicing rights and obligations under the PSA. Burnside Dec., Ex. J. As an added grant of authority, the PSA permits a Master Servicer to request DB to provide a Limited Power of Attorney. *See* 2nd Reyes Dec., Ex. C § 3.01. On May 7, 2007, DB executed a Limited Power of Attorney further authorizing WaMu to act on behalf of DB in various transactions, including foreclosures of loans in the Trust. *Id.* Ex. G. On September 25, 2008, Chase assumed WaMu's mortgage servicing obligations (but not liabilities), including WaMu's Master Servicing responsibilities under the PSA. Smith Dec., Ex. F § 2.1. Thus, as of September 25, 2008, Chase was Master Servicer for the Trust containing Debtors' Note, and authorized to initiate foreclosure. *See* 2nd Reyes Dec. Ex. C §§ 3.01, 3.16.

---

[3] Per the PSA, Long Beach left blank the assignee until enforcement of Trust's rights. *See* 2nd Reyes Dec., Ex. C § 2.01; Burnside Dec., Ex. E at 73:15-74:3. Chase requested and received from DB the original loan documents in December 2008 in preparation for foreclosure, then wrote-in DB as assignee, and by December 9, 2008 added the completed Assignment to its imaged database (which was not imaged previously). *Id.* Ex. D at 78:4-10; Smith Dec. ¶ 4 & Ex. C. Chase is may execute documents on behalf of DB to foreclose. Burnside Dec., Ex. E at 50:5-24.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 6
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### E. Debtors' Default, Rejected Sale, Bankruptcy, and Decision to Move.

In 2007, Debtors went into default, and WaMu began foreclosure proceedings on May 22, 2007. *See* Ashcraft Aff., AP Dkt. 32 ¶ 3. (As noted above, DB has held Debtors' Note since December 21, 2005, and was in possession of Debtors' Note at foreclosure initiation.) In July 2007, Debtors received an offer to purchase their home for $400,000—$46,000 *more* than their loan balance—but opted to *reject* that offer (a decision they now regret). Burnside Dec., Ex. B at 22:9-17. Instead, Debtors filed a Chapter 13 Bankruptcy case on July 24, 2007, which was converted to Chapter 7 on September 2, 2008. Dkt. 1, 59. Debtors' payments under the Note are due from November 2007 forward. Smith Dec. ¶ 9.

On November 12, 2008—with the automatic stay still in effect, no Notice of Trustee's Sale recorded, and no foreclosure sale scheduled—Debtors moved in an effort to sell their house. *See* Burnside Dec., Ex. B at 26:16-22. Neither Chase nor DB (or any creditor) told Debtors to move or that foreclosure was going to occur in the immediate future, *id.* at 42:4-15, and Debtors moved from their house in an effort to *sell* the home, because "you don't stay in a home that you can't make payments on," and because "the sooner [they] sell the house, the sooner [they] can put that behind [them]." *Id.* at 42:15-43:3. Recognizing that they could not cure their default, Debtors moved *not* based on Chase or DB's actions, but because they "wanted to just put it behind [them] and just be done." *Id.* at 101:18-23. At the time Debtors moved from their home, they (mistakenly) believed that: (a) foreclosure was "imminent[]"; (b) they had no right to restrain a sale; and (c) they could not stay in their home during the foreclosure process. *Id.* Ex. C at 6:18-7:18; 8:6-10:5. Had they been properly advised, Debtors would have known that stay-relief had not been requested (let alone granted), the foreclosure process takes many months, *see* RCW 61.24.040(8), and they could have stayed in the home for *nine* months without even seeking to restrain the sale. (Indeed, Debtors could *still* live in the house and can move back in until foreclosure is complete.) Neither Debtors nor the Trustee told Chase, DB, or the Court that they moved from the residence until March 2010, and Debtors' counsel filed the address change with the Court on May 4, 2010—1 ½ years late. Dkt. 133-34.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 7
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**F.     Debtors Meet The Trustee, Who Bars Them From Selling the Residence.**

On November 25, 2008, Debtors had their Section 341 meeting with Trustee, during which Trustee was told that Debtors had moved from the home to sell it.  Dkt. 84, 85; Burnside Dec., Ex. B at 43:4-44:4.  Debtors have represented to the Court that they knew of their alleged defenses to foreclosure at the time they met with the Trustee in November 2008, and that at or near that time the Trustee was told of those defenses.  *See* Dkt. 104 ¶ 4.  Debtors continued trying to sell their home, but Trustee refused to let them proceed (despite cash offers of more than $300,000), and refused to return their calls.  Burnside Dec., Ex. B at 13:22-24 ("[T]o go through all this and then find out that Mr. Wood was stalling us and wouldn't let us sell, we were like, What the heck is going on?"); 21:18-19 ("He was not returning any calls."); 44:25-45:14 ("I told him that we had a cash buyer, we had faxed offers, and we had faxed them to his office, and why didn't he respond"); 96:22-97:2 (offer over $300,000).  Debtors believed that, since Trustee would not let them sell the house, he would maintain it.  *Id.* at 64:9-13.  Debtors were mistaken.

Between November 2008 (when Debtors moved) and April 2009 Debtors' residence suffered "significant damage"—including the door to the home being kicked down, destruction of the garage door, interior trim damage, lighting was stolen, a flooded garage, black mold, and cabinet and roof damage.  *Id.* at 56:17-62:4; Ex. G at 2.  When asked about steps taken to prevent destruction of Debtors' residence (while simultaneously preventing Debtors or Defendants from selling the property), Trustee disavowed any such responsibilities, stating that he:  (i) did not inspect Debtors' residence after learning that Debtors moved out, (ii) has "no idea" whether Debtors' residence is insured; (iii) is only responsible for maintenance of Debtors' residence "if I had money in the case";  (iv) took no action to secure Debtors' residence against further damage after learning of Debtors' move; (v) did not ask the Court for permission to spend "ten or fifteen bucks" for a door lock, based on speculation that unsecured creditors might object; (vi) as a matter of course, does not contact secured creditors (to seek $10-$15) because "it's impossible," "a waste of time," and "a useless act"; (vii) knows vacant homes are frequently damaged; (viii) was not obligated to inspect the residence after learning of its condition because "everybody

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

knows" Trustees are too busy; (ix) is not obligated to (and there is no expectation that he) "take a lot of time figure this all out" because he only "get[s] paid 60 bucks if there's nothing there." *Id.* Ex. A at 23:3-11; 24:11-25:1; 31:5-32:8, 60:16-61:7. Defendants dispute Trustee's obligations.[4]

Trustee was told on May 4, 2009 of the extensive property damage, that the home was not secured, and that it was "***getting worse by the day***," but this information was ***not*** provided to Chase or DB until a few days before the Trustee's deposition in March 2010. Burnside Dec. ¶ 3 & Ex. G (emphasis added). Debtors testified that while under Trustee's "watch" the value of the residence decreased by $215,000, resulting in a recent offer of only $257,000 (and no sale has yet occurred). Burnside Dec., Ex. A at 23:24-24:10, 31:5-8, 60:16-61:7; Ex. B at 96:9-16.

### G.       DB Seeks Stay Relief And Decides To Initiate Foreclosure.

In mid-January 2009—two months ***after*** Debtors voluntarily moved out—Defendants filed their Motion for Relief from Stay ("Stay Relief Motion"). *See* Dkt. 88. Debtors did not oppose stay relief and Trustee (despite what Debtors told him about foreclosure defenses) did not oppose Stay Relief because, in his view "[t]here's no reason to do that," as "it doesn't make any difference," and because he does not think lenders generally foreclose. Burnside Dec., Ex. A at 28:24-29:11. On February 13, 2009, the Court granted the Stay Relief Motion. Dkt. 98. DB initiated foreclosure proceedings in April 2009 (while the Note was in the possession of DB's agent, Chase) and foreclosure was scheduled for August 7, 2009. Ashcraft Aff., AP Dkt. 32, ¶ 10. Debtors did not seek to restrain the sale. Burnside Dec., Ex. B at 20:17-21:14.

### H.       Trustee Files His Adversary Complaint.

Trustee filed an adversary Complaint a few days before the scheduled foreclosure sale, as well as a motion to restrain the sale; Trustee served Chase and DB ***only*** with the Complaint, abandoning the motion to restrain the sale. *See* AP Dkt. 1, 2, 3, 9. The August foreclosure sale was voluntarily discontinued. When asked for the factual bases underlying his Complaint, the

---

[4] The Handbook for Chapter 7 Trustees expressly requires Trustee actively safeguard and protect the property. *See* http://www.justice.gov/ust/eo/private_trustee/library/chapter07/docs/ch7_handbook/ch7_handbook_pii_2010.pdf, at Ch. 6(b)(2). *See also* 6 Collier on Bankr. ¶ 704.04[2] (15th Ed. Rev. 2009) ("The trustee must carefully preserve the estate's assets from deterioration or dissipation."). Trustee has a fiduciary duty to ***all*** estate creditors to protect their interests against dissipation of any assets of the estate. *In re Kile*, 415 B.R. 723, 728 (Bankr. D. Ariz. 2009); *Towe v. Martinson*, 195 B.R. 137, 140 (D. Mont. 1996) (citing *In re Rigden*, 795 F.2d 727, 730 (9th Cir.1986)).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 9
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Trustee admits he defers to counsel to learn facts, he rarely reads pleadings, that he has no knowledge as to the truth of ***any*** fact in the Complaint. Burnside Dec., Ex. A at 12:4-24; 51:18-22; 88:10-12. Trustee had no knowledge of ***any*** damages when the Complaint was filed, but hoped to "discover" evidence for that element of his claims later. *Id.* at 88:10-19.[5]

### III. STANDARD OF REVIEW

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has shown the absence of a disputed issue of fact, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In fact, "the moving party may simply point to the absence of evidence to support the nonmoving party's case." *In re Brazier Forest Prod. Inc.*, 921 F.2d 221, 223 (9th Cir. 1990). The non-movant may not rest on the allegations of the pleadings, but ***must produce specific facts showing a genuine issue***. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986). The non-movant cannot state merely that he will discredit its opponent's evidence at trial. *T.W. Elect. Serv. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). Conclusory statements, speculation, personal beliefs, and unsupported assertions are insufficient to withstand a summary judgment motion, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### IV. ARGUMENT

#### A. Bankruptcy Court Filings Cannot Form the Basis of Liability.

**Trustee's Claims Against Chase and DB Are Based on Court Filings.** Trustee has yet to identify which facts support which claims, instead suggesting at oral argument on other motions that the "totality of the allegations" form the basis for relief. When asked the basis of

---

[5] Defendants received discovery responses regarding damages the night before Trustee's deposition, but Trustee admitted he had never seen the response before and did not know if it was true. Burnside Dec., Ex. A at 71:10-20.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

his claims, Trustee stated his claims are based on allegedly improper filings in Bankruptcy Court (POC and Stay Relief Motion).  Burnside Dec., Ex. A at 27:20-28:23; 84:5-13 ("it was unfair to file documents that were not checked"); SAC, AP Dkt. 6, at 3.1-3.9, 3.14.[6]  Similarly, Trustee's filings in this case and Debtors' main case make clear that Trustee's damage claims are based on Court filings.  *See* Dkt. 119 (adversary proceeding was commenced "to seek damages relating to…misrepresentations [in Defendants' court filings]"); AP Dkt. 67 at 11:7-16; 15:3-15.  But Trustee did not object to these filings, eschewing the clear statutory mechanisms under the Bankruptcy Code in favor of affirmative claims.  This he may not do.

**The Bankruptcy Code Bars Claims Stemming From Bankruptcy Proceedings.**  The Ninth Circuit Bankruptcy Appellate Panel in *In re Chausse* held that the Bankruptcy Code occupies the entire field of remedies for allegedly improper bankruptcy court filings, and state law claims (as well as FDCPA claims) predicated on Bankruptcy Court filings are barred.  *In re Chausse*, 399 B.R. at 230-34, 241 (reversing, and dismissing CPA and FDCPA claims).  "[T]he Code, and the Rules implementing its terms, provide the exclusive remedies should the bankruptcy court eventually find [a creditor's] conduct in Debtor's bankruptcy case to have been wrongful." *Id.* at 233.  If Debtors or Trustee thought Court filings by Chase or DB were somehow inaccurate, the proper remedy is to oppose the filings, not to lie in wait, file a separate action, and seek affirmative relief in separate proceedings.  But here, Debtors **withdrew** their objection to the Proof of Claim stating that all issues had been resolved, *see* Dkt. 39, and nothing stops Trustee from objecting to that claim presently.  Likewise, Debtors claim to have told Trustee in November 2008 of their possible defenses to foreclosure based on issues surrounding the Note, but neither Debtors nor Trustee bothered to oppose Chase and DB's Stay Relief Motion.  *See* Dkt. 104 ¶ 4; Burnside Dec., Ex. A at 28:24-29:11 (Trustee did not oppose stay

---

[6] The WaMu Proof of Claim attached the original Note and Allonge, but **also** attached a copy of the Note with the duplicate Allonge.  Dkt. Claim 7-1.  That WaMu included extraneous documents with its claim (in addition to the **correct** copy of the Note and Allonge) cannot render the claim invalid, since WaMu (acting for DB) accurately stated that it attached evidence of the security interest.  Likewise, although Sbaffoni's Declaration in support of Stay Relief mistakenly attached the extraneous Allonge, the substance of the Declaration is true.  Dkt. 25-4.  The attached Note **was** signed by Debtors, DB **did** hold the original Note and Allonge.  Trustee has **no** evidence that Defendants intentionally misled the Court.  Indeed, if filing the wrong exhibit could create liability, Trustee would be liable.  *Cf.* AP Dkt. 68 ¶ 13 (referencing Ex. M as involving Chase) & AP Dkt. 70-7 (Ex. M; no Chase reference).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 11
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

relief since "it doesn't make any difference"). If Trustee or Debtors belatedly thought DB lacked standing to obtain stay relief, the proper course would be to file a motion to vacate the Order granting stay relief, not to file a separate action seeking affirmative relief. *In re Chausse*, 399 B.R. at 236 ("the Code represents a 'whole system' designed to comprehensively define all rights and remedies of debtors and creditors") (dismissing FDCPA claim, as well as state CPA claim); *In re Bassett*, 255 B.R. 747 (9th Cir. BAP 2000), *rev'd in part on other grounds*, 285 F.3d 882 (9th Cir.2002) (dismissing CPA claim); *see also MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913-15 (9th Cir. 1996) (affirming dismissal of state law claims); *Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987); *In re Miles*, 294 B.R. 756 (9th Cir. BAP 2003), *aff'd* 430 F.3d 1083 (9th Cir. 2005). In reaching its conclusion that the Bankruptcy Code bars state and federal claims arising from court filings, the *Chausse* Court cites *In re Williams*, 392 B.R. 882 (Bankr. M.D. Fla. 2008). *Chausse*, 399 B.R. at 234. *Williams* explains why cases like this are improper:

> [The Complaint] is a paradigm of a so-called attempt of creative lawyering to make a mountain out of a molehill and to transform a simple claim resolution process into an extensive and expensive proceeding. ***It is this Court's opinion that such a proceeding is totally needless*** …. [E]ven filing an invalid proof of claim would be insufficient to form the basis for the claims attempted to be asserted under the FDCPA or the Florida equivalents, the FCCPA and FDUPTA …. To accept … an alternative method to challenge a [claim] in bankruptcy ***would open the floodgate for unnecessary and expensive litigation, replacing the simple procedure for dealing with an objection to the allowance of a claim***.

*Id.* at 888 (emphasis added); *Cf. In re Pariseau*, 395 B.R. 492, 495-96 (Bankr. M.D. Fla. 2008).

      **Litigation Privilege Bars Affirmative Recovery For Court Filings.** Even if Trustee's ambush strategy were proper, state and federal law establishes a litigation privilege, which bars liability for statements made in court filings. *Imbler v. Pachtman*, 424 U.S. 409, 426 n.23 (1976); *FMC Tech. v. Edwards*, 464 F. Supp. 2d 1063, 1068 (W.D. Wash. 2006); *Dexter v. Spokane County Health Dist.*, 76 Wn. App. 372, 376 (1994) ("witnesses are immune from all claims arising out of all testimony"); *McNeal v. Allen*, 95 Wn.2d 265, 267 (1980) ("statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged"). *See also Guijosa v. v. Wal-Mart Stores*, 144 Wn.2d 907, 921 (2001) (barring CPA claim based on testimony as "the act or practice must relate to out-of-court conduct").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 12
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**B.     Chase is Not Liable for WaMu Conduct.**

Chase had no role with respect to Debtors' loan until after it purchased certain assets of WaMu from the FDIC on September 25, 2008.  Trustee cannot maintain any damages claims against Chase based on WaMu conduct because Chase did not assume liability from the FDIC for Trustee's damages claims and because the CPA does not permit assignee liability.

**Claims Against Chase for WaMu Conduct Belong With the FDIC.**  On September 25, 2008, WaMu was placed in receivership with the FDIC, who immediately sold many of WaMu's assets to Chase.  *See* 2nd Smith Dec., Exs. E-F.  Under the Agreement, Chase did not assume any WaMu liabilities involving "claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower" before September 25, 2008, when WaMu was placed into FDIC receivership.  *Id.* Ex. E § 2.5.  With respect to loan servicing, Chase agreed to take over WaMu's loan servicing *obligations*, but not any loan servicing *liabilities* resulting from WaMu conduct.  *Id.* §§ 2.1, 2.5.  The FDIC and Chase have filed declarations in other proceedings affirming that the Agreement was intended to expressly exclude liability for WaMu loan servicing conduct.  Burnside Dec. ¶ 7, Ex. F.  All loan servicing claims before September 25, 2008 belong with the FDIC.  *Id.*; *Grealish v. Wash. Mut. Bank*, 2009 WL 2170044, *1 (D. Utah 2009); *Molina v. Wash. Mut. Bank*, 2010 WL 431439, *3-*4 (S.D. Cal. 2010); *Cassese v. Wash. Mut. Bank,* 2008 WL 7022845, *3 (E.D. N.Y. 2008).[7]

**The CPA Does Not Permit Assignee Liability.**  To the extent Plaintiff's claims against Chase are based on WaMu conduct, those claims fail as a matter of law for the additional reason that the CPA does not permit assignee liability.  *White v. Homefield Fin., Inc.*, 545 F. Supp. 2d 1159, 1169-70 (W.D. Wash. 2008) (no CPA assignee liability) (citing *Schmidt v. Cornerstone Inv., Inc.*, 115 Wn.2d 148, 165 (1990)) (assignee must commit the unlawful act); *Vawter*, _ F. Supp. 2d _, 2010 WL 1629355, at *12 (same) (citation omitted).

---

[7] The congressional scheme governing transfer of assets from a federal receiver to a subsequent purchaser "provides that [the FDIC], and not a subsequent purchaser of assets, is the successor to a failed thrift's liabilities unless [the FDIC] expressly designates otherwise."  *Payne v. Sec. Sav. & Loan Assoc.*, 924 F.2d 109, 111 (7th Cir. 1991).  This scheme vests the FDIC with broad discretion on whether to retain or assign liabilities, which it used here to limit liability.  *Westpark Ass'n. v. Butterfield Sav. & Loan Assoc.*, 60 F.3d 1452, 1459 (9th Cir. 1995) ("[t]he FDIC also had broad powers to allocate assets and liabilities"); *Yeomalakis v. FDIC*, 562 F.3d 56, 59-60 (1st Cir. 2009).  The Agreement explicitly states that the FDIC retained liability for borrower claims arising from WaMu conduct.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**C.    DB Is Entitled to Enforce the Note And May Foreclose on the Deed of Trust.**

Trustee concedes that if DB is the Note holder, it had the right to foreclose and judgment should be entered for Defendants. *See* SAC, AP Dkt. 6, ¶ 3.6, at 7:12-15.  DB *is* the Note holder because the Note: (a) contains an Allonge endorsing the Note from Platinum to Long Beach; (b) was endorsed in blank by Long Beach and transferred it to DB; and (c) has been held by DB since December 20, 2005. *See* 2nd Reyes Dec. ¶¶ 2, 5 & Exs. A, D-E. ***Plaintiff has no evidence to refute this showing, and the Court should grant summary judgment on this basis alone.***

Though not clear from the SAC, Trustee appears to contend that Defendants (DB, through its authorized agent Chase) may not foreclose on the Deed of Trust because (he claims) DB does not own the Note.  Since Plaintiff's claims all derive from this underlying theory, Defendants will discuss the ***multiple*** ways in which they have the right to enforce the Note.

Under controlling Washington statutes, Defendants are entitled to enforce the Note. Specifically, RCW 62A.3-301 provides:

> "Person entitled to enforce" an instrument means (i) **the holder of the instrument**, (ii) <u>**a nonholder in possession of the instrument who has the rights of a holder**</u>, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession ….

*Id.* (emphasis added).  Defendants qualify as a "person entitled to enforce" the Note under two subsections of this statute: (a) Defendants are "holders"; and (b) even if not deemed "holders," DB may enforce the Note because it possesses the Note while having the rights of a holder.

### 1.    Defendant DB is the Note Holder.

The blank indorsement on the back of the Note renders Defendant DB a "holder" of the Note.  RCW 62A.3-205 states: "(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "'blank indorsement.'  <u>**When indorsed in blank, an instrument becomes payable to bearer**</u> and may be negotiated by transfer of possession alone until specially indorsed." *Id.* (emphasis added).  Here, Long Beach, as holder, indorsed the Note in blank.  (A fact of which Trustee was unaware when he filed the Complaint.  SAC, AP Dkt.6 ¶ 3.14.) The blank indorsement makes the Note payable to bearer.  UCC § 1-201(20) defines

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

"[h]older" as "**the person in possession if the instrument is payable to bearer** or, in the case

of an instrument payable to an identified person, if the identified person is in possession."

### 2. DB Has the Original Note and Has Rights of a Holder.

**Possession.** There is no dispute regarding possession of the Note, since DB holds (and

has at all times held) the "blue ink" original (either in its own files or through delivery to its

agents) as permitted under the PSA. *See* Burnside Dec. ¶ 4; 2nd Smith Dec. ¶ 8; 2nd Reyes Dec.

¶ 5. The Note is payable to bearer, and DB's possession thus makes it a holder entitled to

enforce the Note. RCW 62A.3-301

**DB Has the Rights of a Holder.** Alternatively, even if DB for some reason were not

deemed a "holder," DB is entitled to enforce the Note because it has possession coupled with

"the rights of a holder." Under Article 3 of the Washington Uniform Commercial Code, the

transfer of the Note to DB vested it with the rights of a holder. Specifically, RCW 62A.3-203

provides in pertinent part:

> (a) An instrument is transferred when it is ***delivered by a person other than its
> issuer for the purpose of giving to the person receiving delivery the right to
> enforce the instrument***.
> (b) Transfer of an instrument, whether or not the transfer is a negotiation, ***vests in
> the transferee any right of the transferor to enforce the instrument, including
> any right as a holder in due course***, but the transferee cannot acquire rights of a
> holder in due course by a transfer, directly or indirectly, from a holder in due
> course if the transferee engaged in fraud or illegality affecting the instrument.

*Id.* (emphasis added). The Note was transferred to Long Beach by Platinum shortly after

origination. 2nd Smith Dec., Ex. A; 2nd Pittman Dec. ¶¶ 1-3 & Ex A. Mr. Pittman has testified

that Platinum transferred the Note and Deed of Trust for the purpose of giving Long Beach the

right to enforce the Note and Deed of Trust. *See* 2nd Pittman Dec. ¶¶ 1-6. Thus, even if Mr.

Pittman's indorsement were somehow defective, Long Beach is nonetheless a "person entitled to

enforce" the Note. RCW 62A.3-203. Under Washington law, any subsequent transferee of Long

Beach (or its successors) was vested with Long Beach's right to enforce the Note. *See* RCW

62A.3-203(b). When Long Beach transferred the Note to DB (in Long Beach's capacity as a

"person entitled to enforce") in December 2005, DB became vested with Long Beach's right to

enforce the Note. By virtue of (a) DB's possession of the Note, and (b) DB possessing the rights

of a holder, DB is a "person entitled to enforce" the Note.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### 3. The Note and Allonge Signatures Are Authentic and Authorized.

Plaintiff may challenge the authenticity of the original, blue ink signature of Jeffery Pittman on the Allonge evidencing the transfer of the Note to Long Beach. But Mr. Pittman has submitted a declaration in support of this motion stating that the Allonge before the Court bears his authentic and authorized signature. *See* 2nd Pittman Dec. ¶¶ 1-4 & Ex. A. ***This conclusively proves that the Note was properly indorsed to Long Beach.*** Plaintiff has no evidence showing Mr. Pittman did ***not*** sign the Allonge attached to the Note, and concedes that if Mr. Pittman were to testify that the signature on the Allonge attached to the Note was his, Plaintiff is satisfied:

> Q. What if Jeff Pittman … testified under oath … that is, in fact, his signature on this allonge, and this allonge were attached to the note? Would that satisfy you that Jeff Pittman signed this allonge? A. ***If he said that was his signature, yeah***.

Burnside Dec., Ex. A at 50:3-8 (emphasis added). This admission ends the inquiry and the Court should grant Defendants summary judgment on this basis lone.

But even if Mr. Pittman had not so testified, under the UCC, Defendants are entitled to a presumption that his signature is both authentic and authorized. RCW 62A.3-308 provides:

> (a) [T]he authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, ***but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer*** and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

*Id.* (emphasis added). None of the parties to this action seeks to enforce Mr. Pittman's liability under the Note. Therefore, Mr. Pittman's signature is "presumed to be authentic and authorized," and Plaintiff has no admissible evidence to rebut that presumption. ***Indeed, Plaintiff <u>cannot</u> rebut this presumption since Mr. Pittman himself testified under penalty of perjury that the Allonge before the Court bears his authentic signature***. *See* 2nd Pittman Dec. ¶¶ 1-4 & Ex A. Thus, DB is entitled to enforce the Note and foreclose on the Deed of Trust.

### D. There Is No Claim for Wrongful Institution of Foreclosure, and Debtors Cannot Show a DTA Violation or Prejudice in Any Event.

The Court has already recognized that "there is no common law cause of action for wrongful foreclosure in Washington." AP Dkt. 55 at 7:10-12. To the extent Trustee claims DB or Chase violated the DTA, the evidence discussed above shows that no violation occurred. Regardless, the DTA provides the exclusive remedy for an alleged violation, which is to enjoin

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

the sale, **not** pursue damages claims. *See* RCW 61.24.040(1)(f)(IX) ("Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they **bring a lawsuit to restrain the sale** pursuant to RCW 61.24.130.") (emphasis added). Moreover, even if Trustee could show a DTA violation, that "does not necessarily give rise to a cause of action." *Vawter*, _ F. Supp. 2d _, 2010 WL 1629355, at *6. "[T]here is no statutory basis supporting a claim for damages for wrongful institution of foreclosure proceedings." *Id*.

Judge Robart, in an exhaustive opinion, last month rejected the argument that a pre-foreclosure DTA violation gives rise to a damages claim. *Id*. The Court noted that there is no DTA provision "that permits a cause of action for wrongful institution of foreclosure proceedings" and that the legislature "established a comprehensive scheme for the nonjudicial foreclosure process." *Id*. Judge Robart explains that "[i]nterjecting a cause of action for damages for wrongful institution of nonjudicial foreclosure proceedings into the DTA's scheme would potentially upset the balance struck of the legislature," and that "to the extent the legislature intended to permit a cause of action for damages, it could have said so." *Id*. at *6. Allowing "damages for wrongful institution of foreclosure proceedings would potentially undermine the legislature's goal that the nonjudicial foreclosure process remains efficient and inexpensive," because doing so "would **spawn litigation under the DTA … thereby interfering with the efficient and inexpensive nature of the nonjudicial foreclosure process**." *Id*. (emphasis added). Finally, even assuming a claim exists, absent evidence of prejudice, a DTA claim fails. *Id*. at *7. "[I]t does not follow that a grantor or borrower can maintain a cause of action for damages for violation of the DTA where the trustee's sale is discontinued." *Id*.

Judge Robart's view is in accord with well established Washington law. Where there is a "technical, formal error, non-prejudicial, and correctable" in the process, a foreclosure may proceed because "**prejudice must be established**." *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 113 (1988) (emphasis added). This makes sense because, absent prejudice, a DTA violation is meaningless to the borrower and cannot confer standing for affirmative relief. For a

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 17
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

borrower, the "purpose of the notice of default is to notify [him] of the amount he owes and that he is in default." *Id.* at 112. Recording requirements are in place to protect other **creditors** who might claim an interest in the property—not **borrowers**. *E.g.*, *In re United Home Loans,* 71 B.R. 885 (W.D. Wash. 1987), *aff'd* 876 F.2d 897 (9th Cir. 1989) ("An assignment of a deed of trust and note is valid between the parties whether or not the assignment is ever recorded"; "Recording of the assignments is for the benefit of third parties"). Indeed, even if DB **never** held Debtors' Note, that fact cannot support a DTA claim absent prejudice resulting from an actual foreclosure. *See Vawter*, _ F. Supp.2d _, 2010 WL 1629355, at *10 ("Even accepting as true the Vawters' allegation that Chase previously did not hold the Note, this does not give rise to a cause of action for damages under the DTA where the trustee's sale has been discontinued.").

Here, where Debtors do not dispute default (or the amount) and do not contend that they lacked appropriate notice of the foreclosure sale, there can be no prejudice from the sale—even if no other DTA requirement were met. This is because a non-judicial foreclosure will forever extinguish Debtors' obligations under the Note—even if the foreclosing party lacks authority to foreclose. *See* RCW 61.24.100; *CHD, Inc. v. Boyles*, 138 Wn. App. 131, 136-37 (2007). Thus, a defaulting borrower (that does not seek to cure or contest the default) *is economically indifferent to who holds the Note because the obligations under the Note disappear upon foreclosure.* Another **creditor** claiming superior title may have an interest in whether the beneficiary is the Note owner—and certainly has a claim against a party that improperly forecloses—but a **borrower** does not. *Koegel*, 51 Wn. App. at 112 ("Appellants contentions that he was prejudiced by this lapse are disingenuous," because borrower had notice).

In fact, the Washington Supreme Court has reversed on this very basis. In *Udall v. T.D. Escrow Serv.*, 159 Wn.2d 903 (2007), borrowers did not contest default, but the trustee mistakenly sold the property to Mr. Udall at a price $100,000 below the minimum amount permitted by the beneficiary; upon discovery, the Trustee refused to complete the transaction, causing Mr. Udall to file suit. *Id.* at 907-08. The trustee (echoing the court of appeals) argued that his fiduciary duty to the borrower barred him from completing the unauthorized sale, even

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 18
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

though there was no dispute as to default or amount.  *Id.* at 915; *see also Udall v. TD Escrow Serv.*, 132 Wn. App. 290, 299 (2006), *rev'd other grounds*, 159 Wn.2d 903 (2007).  Although the Court acknowledged that the DTA "must be construed in favor of borrowers," it reversed the Court of Appeals, holding that completing the wrongful foreclosure "***does not injure the borrower's interests***, because the debt secured by the deed of trust is per se satisfied by the foreclosure sale due to the Act's anti-deficiency provision."  *Udall*, 159 Wn.2d at 916 (emphasis added).  So too here.  Even if the Court rejects the overwhelming evidence showing DB owns the Note—and Trustee has no evidence showing DB did not own the Note—and further finds that foreclosure was wrongfully initiated, that fact **cannot** support affirmative relief because Trustee cannot show injury to Debtors as a result, and therefore cannot show the prejudice necessary for a DTA claim.  Trustee has no evidence supporting a DTA violation (or prejudice); the DTA does not permit damage claims and the Court should grant Defendants summary judgment.

**E.**     **Trustee Cannot Establish <u>*Any*</u> Element of His Slander of Title Claim.**

Plaintiff's Complaint alleges a claim for slander of title against certain defendants (but **not** DB).  To prevail, Plaintiff must show:  (1) a false statement about the property; (2) with malice; (3) causing pecuniary loss; (4) the false statement refers to the sale or purchase of the property; and (5) the slander must be so great as to defeat title.  *Rorvig v. Douglas*, 123 Wn.2d 854, 859-60 (1994); *Brown v. Safeway Stores, Inc*., 94 Wn.2d 359, 375 (1980).  The Court already rejected Plaintiff's slander of title claim due to lack of evidence of a pending sale, negotiations, or purchase offers at foreclosure initiation.  AP Dkt. 55 at 5:18-6:4.  The Court should likewise grant summary judgment here, and because Plaintiff cannot show malice, which requires proof of false statements, not in good faith, and without "reasonable belief in [their] veracity."  *Commercial Dev. Co. v. Abitibi-Consol.,* 2008 WL 2856889, *9 (W.D. Wash. 2008).

**F.**     **Trustee's CPA Claim Fails as a Matter of Law.**

Plaintiff brings a CPA claim against Chase and DB, apparently based on Defendants' Court filings, which Plaintiff believes show that Defendants violated the DTA.  *See* SAC ¶¶ 5.2-5.3.  As noted above, those claims are preempted by the Bankruptcy Code.  *See* § IV.A, *supra*.  But assuming for the sake of argument that CPA claims are not preempted, Trustee's CPA claim

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

fails anyway. Trustee refuses to identify which acts are "unfair," suggesting only in prior oral arguments that claim is based on the "totality of the allegations." But if allowing *single* damages actions "would potentially upset the balance struck by the legislature" and "potentially undermine the legislature's goal that the non-judicial foreclosure process remains efficient and inexpensive," then allowing *treble* damages and attorneys' fees would necessarily further upset the legislative balance and goals. *Vawter*, _ F. Supp. 2d _, 2010 WL 1629355 at *6.

To maintain a private CPA claim, Plaintiff must establish: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; (4) injuring Plaintiff's business or property; and (5) caused by Defendants' unfair or deceptive act. *Hangman Ridge*, 105 Wn.2d at 780. Plaintiff's claim fails because: (a) DTA violations do not equate to a CPA claim; (b) Trustee cannot establish an unfair act or practice; (c) court filings do not occur in "trade or commerce"; (d) there is no evidence of injury caused by Chase or DB.

### 1. This Court Should Not be the First to Permit Affirmative Claims Based on A Perceived Lack of Authority Under the DTA.

**Courts Do Not Allow Affirmative Claims Based on DTA Standing.** The Court has already held that "a plaintiff may assert a claim under the CPA based upon the conduct of the defendants relative to the foreclosure process." AP Dkt. 55 at 10:7-11. Defendants agree that affirmative claims (unrelated to the authority to foreclose) may arise between parties to a foreclosure action.[8] But no Washington appellate court or federal district court has ever permitted *affirmative* claims under the DTA for pre-foreclosure conduct. Before foreclosure, the DTA permits borrowers to raise "any proper legal or equitable ground" as a basis "to *restrain*" a sale, *not* as an affirmative claim for relief. RCW 61.24.130(1). Indeed, the notice mandated by the DTA expressly provides that borrowers "may raise any legitimate *defenses*" to default. RCW 61.24.040(IX) (emphasis added). The DTA "provides a detailed set of procedures for non-

---

[8] For example, if a party affirmatively prevents a borrower from complying with their Note or Deed of Trust obligations, takes actions precluding borrowers from curing default or restraining a foreclosure sale, or (less likely) physically harms Debtors, those actions create independent liability. *E.g.*, *Hardcastle v. Greenwood S&L Ass'n*, 9 Wn. App. 884, 889 (1973) (allowing liability where the lender "both created and maintained the conditions which made it impossible for [borrowers] to comply with the terms of the deed of trust"). But liability turns not on issues of standing or DTA compliance, but on *ultra vires* conduct outside the DTA. Allowing substantive *defenses* to foreclosure to be converted into *offensive* claims thwarts the DTA's purpose and will result in attempts to convert a strictly-construed statute into strict liability for lenders. Not every "technical, formal error, non-prejudicial, and correctable" should result in treble damages and attorneys' fees. *Koegel*, 51 Wn. App. at 113.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 20
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

judicial foreclosure sales," and allowing *affirmative* claims "would interfere with these statutory procedures and contravene the Act's purpose and policy," by "making the process more lengthy (e.g., no finality), inefficient (e.g., more procedures), and expensive (e.g., litigation)." *Udall*, 132 Wn. App. at 302. Indeed, the first case addressing waiver of post-foreclosure fraud claims emphasized that fraud is "a *defense*" to foreclosure, *not* an affirmative claim. *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 32 (1971) (emphasis added).

*Every* court to address similar claims has rejected them. Indeed, in the closest case on point, Judge Robart granted a motion to dismiss a CPA claim, holding that the alleged failure to comply with the DTA was insufficient to establish CPA liability. *Barnett v. TD Escrow Serv.*, 2005 WL 1838623, *3 (W.D. Wash. 2005). (The Court also noted that the basis for CPA injury was "less than clear given that Defendants threatened, but never foreclosed on Plaintiffs' home." *Id.* n.5.) The same is true here. *E.g.*, *Bain v. Metro. Mortg. Group*, 2010 WL 891585, *5 n.6 (W.D. Wash. 2010) (Coughenour) (if "Plaintiff is alleging that a violation of the DTA necessarily shoehorns her complaint into a violation of the CPA, this claim fails"). If Trustee thought Defendants were not entitled to foreclose, the remedy was to *object to* Defendants' Proof of Claim or *oppose* stay relief and restrain the sale; Trustee did <u>neither</u>. Plaintiff "shall not now be allowed to circumvent the purposes of the [DTA] by couching [his] claims in [CPA] language." *Universal Life Church v. GMAC Mortg.*, 2007 WL 1185861, *4 (W.D. Wash. 2007) (Martinez); *IndyMac Venture v. Silver Creek Crossing*, 2010 WL 1138391, *4 (W.D. Wash. 2010) (Zilly) (DTA "does not provide any separate cause of action or legal claim"); *Henderson v. GMAC Mortgage*, 2008 WL 1733265, *5 (W.D. Wash. 2008) (Leighton) ("illegal foreclosure" claim fails since "no foreclosure ever occurred"), *aff'd* 347 Fed. Appx. 299 (2009).

**The Legislature Has Considered, But Not Adopted, Pre-Foreclosure CPA Claims.** If the Legislature wanted pre-sale violations of the DTA to give rise to CPA claims, it would have expressly established such a right, as it did (prospectively) for certain post-sale claims. RCW 64.21.127, .135; *see State v. Schwab*, 103 Wn.2d 542, 693 P.2d 108 (1985) (rejecting argument that CPA claims may arise from violations of the Residential Landlord Tenant Act, where

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 21
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Legislature considered, but did not adopt those claims).  In fact, the Washington Legislature has considered, but never adopted pre-foreclosure CPA remedies, and decided instead to allow CPA claims only under limited post-foreclosure instances, and only for owner-occupied residences (unlike here).[9]  It is precisely this failure to act that caused the Washington Supreme Court to reject CPA claims based on alleged violations of the Residential Landlord Tennant Act.  *Id.*; *cf. Vawter*, _ F. Supp. 2d _, 2010 WL 1629355, at *6 ("to the extent the legislature intended to permit a cause of action for damages, it could have said so").  Indeed, the Legislature's recent amendments confirm that pre-foreclosure conduct cannot form the basis of lender liability.  The Legislature amended the DTA to provide only for post-foreclosure claims for fraud, CPA violations, and "*material*[]" DTA violations **by the trustee**.  RCW 61.24.127(1) (emphasis added).  But DTA violations can form the basis of liability only for the Trustee, and only if "material."[10]  It would make no sense to permit broader CPA claims for DTA violations before foreclosure (when there is less potential injury) than after.  Before DTA amendment, cases held that a party waives the right to post-sale remedies where she has "knowledge of a **defense** to foreclosure prior to the sale" and does not seek to restrain the sale.  *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 163 (2008) (emphasis added).  Claims "waived" by not seeking an injunction were **defensive** claims to restrain foreclosure, not **affirmative** damages claims.

### 2.  Plaintiff Cannot Establish an Unfair Act or Practice.

**Plaintiff Alleges Only "Unfair" Conduct, Which Differs from "Deceptive" Conduct, and Requires a Per Se Unfair Practice.**  Plaintiff's CPA claim alleges that "all of the Defendants have engaged in a pattern of unfair business practices," which "have impaired and damaged the Estate."  SAC, AP Dkt. 6, ¶¶ 5.2-5.3.  *This is the entirety of Plaintiff's CPA allegations.*[11]  Plaintiff's conclusory allegations would not withstand a Rule 12 motion, let alone

---

[9] *E.g.*, http://apps.leg.wa.gov/documents/billdocs/2009-10/Pdf/Bills/House%20Bills/3215.pdf (proposed bill for pre-foreclosure claims); http://apps.leg.wa.gov/documents/billdocs/2009-10/Pdf/Bills/Senate%20Bills/6648.pdf (same).
[10] To the extent these amendments are viewed as supporting CPA liability generally, the amendments actually counsel against liability here.  (The amendments do not affect Debtors because they were not in effect when foreclosure began.)  The legislature allowed CPA claims **only** for "owner-occupied residential real property."  RCW 61.24.127(3).  Debtors here moved out nine months before the Complaint was filed, thereby precluding a CPA claim in the manner contemplated by the legislature.  *See Moon v. GMAC*, 2009 WL 3185596, *8 n.4 (W.D. Wash. 2009) (Zilly) (DTA amendments do not apply where borrower moved out of residence).
[11] Plaintiff's incorporation of **all** allegations to show "unfair" conduct is an improper "shotgun" pleading that fails as

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

summary judgment. "[W]hether the [alleged] conduct constitutes an unfair or deceptive act can be decided by this court as a question of law." *Indoor Billboard Wash., Inc. v. Integra Telecom of Wash.*, 162 Wn.2d 59, 74 (2007). Plaintiff can meet the first CPA element in *only* two ways:

> To date we have recognized that consumers may establish the first element in two ways. They may show either that an act or practice [i] "has a capacity to deceive a substantial portion of the public," or [ii] that "the alleged act constitutes a per se unfair trade practice."

*Saunders v. Lloyd's of London*, 113 Wn.2d 330, 344 (1989) (quoting *Hangman*).

Notably, Trustee's CPA claim hinges *only* on "unfair" conduct, not deceptive conduct. *Id.* This is significant because "the Washington Supreme Court has explained that the terms 'unfair' and 'deceptive' are *separate* concepts." *Watkins v. Peterson Enter., Inc.*, 57 F. Supp. 2d 1101, 1111 (E.D. Wash. 1999) (emphasis added) (citing *Hangman Ridge*, 105 Wn.2d at 785-86; *Saunders*, 113 Wn.2d at 344). There are different requirements necessary to establish (or defeat) "unfairness," as opposed to "deception." For example, "good faith" is a defense to allegations of unfair conduct, but *not* "deceptive" conduct. *Watkins*, 57 F. Supp. 2d at 1110-11. The "capacity to deceive" analysis bears *only* on deception, and has no bearing on whether conduct is unfair. *See, e.g.*, *Smale v. Cellco P'Ship*, 547 F. Supp. 2d 1181, 1188 (W.D. Wash. 2008) (*deception* turns on capacity to deceive; *unfairness* must be "per se" unfair). This is the lesson of *Hangman Ridge*, where the Court held that "it has become clear that the Legislature, not this court, is the appropriate body to establish" what amounts to "unfair" trade practices. 105 Wn.2d at 787.

Indeed, Judge Pechman recently confirmed this approach in a case *directly* on point. *Alvarado v. Microsoft Corp.*, 2010 WL 715455 (W.D. Wash. 2010). In *Alvarado*, as here, Plaintiffs based their CPA claim on "unfair" conduct, rather than deceptive conduct, and argued that they "need only plead that [Defendant's] conduct is 'unfair,' not per se unfair [as declared by the Legislature], to satisfy the CPA." *Id.* at *3. The Court rejected that view as "attempt[ing] to stretch the [CPA]," holding that "[c]onduct that is alleged to be simply unfair is not sufficient," and that "*Hangman Ridge* remains the law in Washington and *requires that the conduct be per se unfair, not merely labeled unfair by the Plaintiff*." *Id.* (emphasis added).

a matter of law. SAC, AP Dkt. 6, ¶ 5.1; *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 23
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Since Trustee alleges only "unfair" conduct, the only way to meet the first CPA element is by pointing to a statute identifying Defendants' conduct as a per se unfair trade practice. *Id.*; *Minnick v. Clearwire US LLC*, _ F. Supp.2d _, 2010 WL 431879, *5 (W.D. Wash. 2010) ("*Hangman Ridge* … requires the Legislature to make determinations of unfairness"). The Court should dismiss Trustee's CPA claim because Trustee cannot show a per se unfair trade practice.

**Even if a Per Se Violation Were Not Required, Trustee Has No Evidence Supporting Unfair Conduct by Chase or DB.** Assuming for the sake of argument that "unfair" conduct may be proven through something other than a statutory violation, Trustee's claim fails anyway, because he has no evidence suggesting Chase or DB acted unfairly toward Debtors. The only "unfair" conduct Debtors could identify was largely directed at the Trustee, who refused to return their calls when they wanted to proceed with a short-sale in the Spring of 2009. Burnside Dec. Ex. B at 13:22-24 ("to go through this then and find out that Mr. Wood was stalling us and wouldn't let us sell, we were like, What the heck is going on?"); 21:18-19; 44:25-45:14; 96:22-97:2. With respect to Chase and DB, Debtors testified that the only unfair conduct was that when they tried to sell their home in 2009, their realtor could not identify who held the Note or Deed of Trust so as to proceed with a short-sale. *Id.* at 93:1-95:16. Of Course, Debtors' counsel had been working directly with DB throughout Debtors' bankruptcy, and thus Debtors (or at least their counsel) knew exactly whom to speak with to raise any issues they had as to the Note or Deed of Trust, but did not do so. *See* Dkt. 36 (stipulation between DB and Debtors), 46, 58.

Debtors admit receiving the Notices of Default telling them DB held the Note, admit that they did not ask Chase or DB to authorize a short sale, and admit that it was Trustee (not Chase or DB) who told their realtor not to proceed with the sale. Burnside Dec., Ex. B at 26:3-10; 31:15-34:9;102:22-103:4. (Publicly recorded documents also identify DB as holder of the Note and Deed of Trust, *see* AP Dkt. 31-3 at 1; AP Dkt. 63-8 at 1). Indeed, Debtors confessed that they did not ***care*** who owned the Note; their concern was with trying to convince the lender (and Trustee) to allow a short sale, which Trustee refused to discuss with them. Burnside Dec., Ex. B at 73:4-7. Likewise, Trustee's evidence of "unfairness" is his personal belief that "it was unfair

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 24
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  to file documents [in Court] that were not checked." Burnside Dec., Ex. A at 84:12-13. But this

2  "unfairness" assertion rings hollow since Trustee did not oppose these fillings.

3       **Defendants' Conduct Was In Good Faith and Thus Cannot Be Unfair.** Washington

4  courts have long recognized that "[a]cts performed in good faith under an arguable interpretation

5  of existing law do not constitute unfair conduct violative of the [CPA]." *Leingang v. Pierce*

6  *County Med. Bureau, Inc*., 131 Wn.2d 133, 155 (1997) (citations omitted). Here, Trustee

7  suggests that the indorsement from Platinum to Long Beach is questionable, purportedly

8  rendering DB's foreclosure questionable, based on perceived issues with regard to Mr. Pittman's

9  signature. But Trustee does not allege facts, or provide evidence, suggesting that DB had any

10 reason to believe that the Note was improperly indorsed or assigned, such that Defendants'

11 conduct in initiating foreclosure might have been out of compliance with the DTA. The

12 evidence shows that Defendants reviewed the original Note and Allonge and had no reason to

13 believe (and still do not) that there was any problem with the authenticity of those documents.

14 Because "[a]cts performed in good faith under an arguable interpretation of existing law do not

15 constitute unfair conduct," the Court should dismiss Trustee's CPA claim. *Id.*

16      **Even if Trustee Alleged Deception, He Could Not Prove it Here.** Trustee does not

17 allege (or have evidence to support) deceptive conduct by Chase or DB; nor does Trustee

18 identify *any* statement or action taken by DB or Chase toward Debtors that has the capacity to

19 deceive a substantial portion of the public. To be considered "deceptive," the act or practice

20 must be one that "misleads or misrepresents something of material importance." *Nguyen v. Doak*

21 *Homes, Inc*., 140 Wn. App. 726, 167 P.3d 1162, 1166 (2007).[12] Trustee identifies not one fact

22 (let alone a material one) that Defendants mislead Debtors about and thus cannot show

23 deception. Further, because all actions taken by Defendants to collect on the Note are expressly

24 authorized by the UCC, those acts cannot amount to a deceptive act under the CPA, and the

---

25 [12] "Implicit in the definition of 'deceptive' … is the understanding that the practice misleads or misrepresents
26 something of **material** importance." *Holiday Resort Cmty. Ass'n v. Echo Lake Assoc., LLC*, 134 Wn. App. 210, 226
   (2006) (emphasis added). Any deception-based theory fails here not just because it is unpled, but because Trustee
   has no evidence a material misstatement or omission from Chase or DB caused Debtors to act differently than had
27 they known the truth. "A 'material fact' is one 'to which a reasonable [person] would attach importance in
   determining his or her choice of action.'" *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 114 (2004).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Court should dismiss Plaintiff's CPA claim. Moreover, to the extent Trustee's purported unfair or deceptive acts or practices are based on WaMu's Proof of Claim or DB's Stay Relief Motion, those Court filed documents cannot form the basis for a CPA claim. *See Guijosa*, 144 Wn.2d at 921 ("the act or practice must relate to ***out-of-court conduct***") (emphasis added). As Judge Coughenour recently noted, "[i]t is inconceivable that a party might have a claim for unfair or deceptive acts or practices every time an opponent … resorted to the courts to settle a dispute.") *Soundview Ins. Agency v. Berjac of Portland*, 2010 WL 770966, *2 (W.D. Wash. 2010).

### 3. Chase and DB's Court Filings Cannot Form the Basis of a CPA Claim Because They Did Not Occur in Trade or Commerce.

Under the CPA, "'[t]rade' and 'commerce' are defined as 'the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." *Browne v. Avvo*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007) (citing RCW 19.86.010(2)). But Washington courts recognize that in-court conduct—filing stay relief motions or proofs of claim—"does not constitute 'trade or commerce' under the CPA." *Medialdea v. Law Office of Evan Loeffler*, 2009 WL 1767185, *8 (W.D. Wash. 2009) (Lasnik). Thus, to the extent Trustee's claims turn on Court filings by Chase or DB (and are not preempted), Trustee's claims fail because Court filings are not "in trade or commerce" and do not satisfy an essential CPA element. "Any doubt that the CPA is inapplicable [to bankruptcy court filings] is eliminated by examining the requirement that the unfair acts or practices occur in the conduct of any trade or business," because the "***filing of a proof of claim cannot reasonably be construed as conduct occurring in the sale of assets or services or in commerce***." *Chausse*, 399 B.R. at 242 (Jury, concurring) (emphasis added) (citations omitted); *Williams*, 392 B.R. at 888 (court filings are not "in trade or commerce" and cannot form basis for CPA-type claim).

### 4. Plaintiff Cannot Establish Injury Caused by Chase or DB.

Plaintiff alleges literally no facts suggesting that Debtors have suffered injury to their business or property, instead making only the conclusory allegation that (somehow) the conduct of "Defendants" has "impaired and damaged the Estate." Compl. ¶ 5.3. This is insufficient. *See, e.g.*, *Vawter*, _ F. Supp. 2d _, 2010 WL 1629355, at *12 ("Vawters simply plead no

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

actionable injury. Notably, no trustee's sale actually occurred, and the Vawters neither dispute their default under the terms of the Note nor challenge the proposition that nonjudicial foreclosure is appropriate generally"). Any injuries suffered by Debtors are entirely self-inflicted. It was Debtors' **default** that caused foreclosure to begin. It was Debtors' rejection of a $400,000 offer on their home—more than enough to pay off their loan—that resulted in their decision to file for bankruptcy. *See* Burnside Dec., Ex. B at 22:9-17. Trustee has argued that Debtors' moving expenses might establish injury. But neither Chase nor DB forced Debtors to move—they could still be in their home now—and their decision to move before the bankruptcy stay had been lifted was their own. Debtors' decision to move was ***not*** based on conduct by Chase or DB, *id.* at 42:4-15, but an effort to sell their house. *Id.* at 26:16-22; 42:15-43:3 ("the sooner we sell the house, the sooner we can put that behind us"). Washington courts adopt the doctrine of avoidable consequences as a complete bar to recovery under the CPA. *E.g., Young v. Whidbey Island Bd. Of Realtors*, 96 Wn.2d 729, 731-34 (1982). Because Debtors' purported damage resulting from moving was avoidable by not moving, any damage is self-inflicted and cannot form the basis of CPA liability. *Id.* To the extent Plaintiff suggests defending against foreclosure is injury, that argument fails factually and legally since: (a) Debtors never sought to restrain the sale; and (b) that argument has been squarely rejected:

> DeLaurenti's mere involvement in having to defend against Sign's collection action and having to prosecute a CPA counterclaim is insufficient to show injury to her business or property, contrary to the trial court's conclusion. To hold otherwise would be to invite defendants in most, if not all, routine collection actions to allege CPA violations as counterclaims.

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 564 (1992).

Likewise, where (as here), there is no dispute about the existence of the debt or Debtors' default, even if Defendants lacked authority to foreclose, that ***could not injure*** Debtors, because the DTA contains an anti-deficiency provision, ***barring any future claims*** against Debtors after foreclosure (even if the foreclosing party had no right to foreclose). RCW 61.24.100(1). In such a case, the Note holder may have a claim against the foreclosing party, but Debtors surely do not. But even if Trustee could somehow show an injury to Debtors' business or property—and he

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

cannot—he cannot establish that but-for conduct by DB or Chase that no injury would have occurred. Debtors' failure to make timely loan payments is the cause of their problems. In the absence of some evidence that but-for Chase or DB's conduct, Debtors would not have suffered some injury, Plaintiff's CPA claim fails as a matter of law. *Indoor Billboard*, 162 Wn.2d at 74.

### G. Plaintiff's FDCPA Claims Fail as a Matter of Law.

To call Plaintiff's FDCPA claim conclusory would be charitable. The Complete allegations are as follows: "By way of the actions described above in the Factual Allegations section, Defendants attempted to collect a debt from Plaintiff on behalf of an entity which did not own the debt and was not entitled to payment on the debt." Compl. ¶ 6.2.[13] This is insufficient.

*First*, Defendants have established that DB does, in fact, own the debt, and Trustee alleges no facts suggesting any improper or abusive methods used to collect that debt. As a result, the FDCPA claim fails as a matter of law. *See* 15 U.S.C. § 1692(e).

*Second*, as noted above, the Ninth Circuit Bankruptcy Appellate Panel recognizes that FDCPA claims based on Bankruptcy Court filings are expressly barred by the comprehensive bankruptcy code. *Chausse*, 399 B.R. at 241 ("Debtor's claim … is precluded by the Code").

*Third*, Plaintiff's claims fail because creditors and loan servicers are not "debt collectors" under the FDCPA. The FDCPA defines a "debt collector," generally, as a party that collects a debt on behalf of the creditor after the borrower has defaulted. 15 U.S.C. § 1692a(6). But "[t]he legislative history of [the FDCPA] indicates conclusively that a debt collector does ***not include the consumer's creditors***." *Gentsch v. Ownit Mortgage Solutions*, No. CV F 09-0649, 2009 WL 1390843, *7 (E.D. Cal. 2009) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds*, 761 F.2d 237 (5th Cir. 1985)) (emphasis added); *see also Brooks v. Citibank NA*, 345 Fed. Appx. 260, 262 (9th Cir. 2009) (same).

*Fourth*, and perhaps more important, no Defendant is seeking to collect a debt—this case involves a non-judicial foreclosure on the Deed of Trust, not payment under the Note—and thus

---

[13] Plaintiff's failure to identify ***which*** defendants are liable under this theory supports summary judgment as well. *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping defendants together violates Rule 8(a)). Further, the FDCPA's 1-year limitations period means that DB cannot be liable for any conduct before August 13, 2008 (and nor can Chase, since its first actions toward debtors were not until January 2009). 15 U.S.C. § 1692k(d).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 28
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

cannot be debt collectors. Courts have consistently found that lenders and trustees that engage in foreclosure are not "debt collectors" under 15 U.S.C. § 1692a(6) because they are not seeking to collect money; instead, they are seeking to enforce a secured interest (the Deed of Trust) to gain property. *Miller v. Northwest Trustee Servs., Inc.*, 2005 WL 1711131, at *3 (E.D. Wash. 2005) (citing *Hulse v. Ocwen Federal Bank, FSB,* 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (finding "foreclosing on a trust deed is distinct from the collection of the obligation to pay money. . . . Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.")); *Fong v. Prof'l Foreclosure Corp.*, 2005 WL 3134059, *2 (W.D. Wash. 2005) ("foreclosing on a deed of trust enforces an interest in property, not a consumer's obligation to pay money") (citing cases); *Heinemann v. Jim Walter Homes, Inc.,* 47 F. Supp. 2d 716, 722 (D. W. Va. 1998) (because "the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA"). The court in *Hulse* summarized this reasoning as follows:

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

*Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002). Here, Defendants' conduct relates to nonjudicially foreclosing the Deed of Trust, not seeking repayment from Debtors. *E.g.*, *Mitchell Bank v. Schanke*, 676 N.W.2d 849, 860-61 (Wis. 2004) (missing note irrelevant since mortgage secures the underlying obligation, not the note, which is merely evidence of the obligation: "What matters is the debt itself, not the Note."). Defendants' conduct is not debt collection under the FDCPA.

### H.     Trustee's Fiduciary Duty Claim Fails as a Matter of Law.

Plaintiff's fiduciary duty claim focuses on Defendant Northwest Trustee Services, does not mention DB or Chase, and instead vaguely refers to "Defendants." Trustee alleges that "[t]he other defendants owed a fiduciary duty or quasi-fiduciary duty to Plaintiff, including but not limited to, providing Plaintiff with fair and honest disclosure of all facts relating to the endorsements on Debtors' Promissory Note and the actual owner/holder of the Note, and to

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

provide only truthful information regarding the entitlement to foreclose to Debtors, this Court and to the Trustee (Plaintiff herein), as well as to provide truthful information to Defendant NWT." SAC, AP Dkt. 6, ¶ 7.3. The existence of a fiduciary duty is a question of law. "The general rule in Washington is that a lender is not a fiduciary of its borrower." *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 426-27 (1994). Instead, "a special relationship must develop between a lender and a borrower before a fiduciary duty exists." *Id.* (citations omitted). Plaintiff must allege facts showing that the lender: (a) has superior knowledge and information about the loan; (b) the borrower lacks such knowledge or business experience; (c) the borrower relied on the lender's advice; and (d) and the lender knew the borrower was relying on the advice. *Id.*; *see also Castaneda v. Saxon Mortgage Serv. Inc.*, ___ F. Supp. 2d ___, 2009 WL 4640673, *4 (N.D. Cal. Dec. 3, 2009) ("As the servicer of the loan, Saxon does not owe a duty to the borrowers of the loans it services."); *Marks v. Ocwen Loan Serv.*, 2009 WL 975792, at *7 (N.D. Cal. 2009) ("[A] loan servicer does not owe a fiduciary duty to a borrower beyond the duties set forth in the loan contract.")). Trustee has no evidence establishing the special relationship required to prove breach of a fiduciary duty, and the Court should grant Defendants' summary judgment.

## V.    CONCLUSION

For the above reasons, the Court should enter summary judgment in Defendants' favor.

DATED this 21st day of May, 2010.

Davis Wright Tremaine LLP
Attorneys for Defendants Deutsche Bank
National Trust Co. & JP Morgan Chase Bank
By /s/ Fred B. Burnside
    Fred B. Burnside, WSBA #32491
    Joshua A. Rataezyk, WSBA #33046
    1201 Third Avenue, Suite 2200
    Seattle, Washington 98101-3045
    Tel.(206) 757-8016; Fax (206) 757-7016
    E-mail: fredburnside@dwt.com
    E-mail: joshrataezyk@dwt.com

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 30
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

CERTIFICATE OF SERVICE – 1
AP Case No. 09-01345-KAO
DWT 13946708v7 0036234-000029

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700