UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>STEVEN C. BATEMAN and VIRGINIA T. LEE,<br><br>         Debtor.<br>_____<br><br>EDMUND J. WOOD, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Steven C. Bateman and Virginia T. Lee,<br><br>         Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for Long Beach Mortgage Loan Trust 2006-1; LONG BEACH MORTGAGE COMPANY; WASHINGTON MUTUAL BANK, as successor-in-interest to Long Beach Mortgage Company by operation of law and/or as its attorney in fact; JP MORGAN CHASE BANK, N.A.; LENDER'S PROCESSING SERVICES, INC.; PLATINUM HOMES, INC., NORTHWEST TRUSTEE | Case No.: 07-13346-KAO<br><br>Adversary Case No. 09-1345-KAO<br><br>PLAINTIFF'S MOTION TO AMEND COMPLAINT TO CONFORM TO THE EVIDENCE |

SERVICES, INC.,

                Defendants.

COMES NOW, Plaintiff EDMUND J. WOOD, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Steven C. Bateman and Virginia T. Lee, to move this Court to allow him to amend his Complaint in order to conform to the evidence.

## **INTRODUCTION**

This Court has already received a substantial amount of information about the documents and claims at issue in this case. However, a significant amount of new information and clarity has become evident to Plaintiff in the last month or two, and it is clear that Plaintiff needs to amend his Complaint again in order to conform to the evidence.

## **FACTS**

As this Court knows, the basis for the Trustee's original Complaint and subsequent amendments done at the very beginning of this case was the contradictory information provided to this Court along with various pleadings and whether those documents properly supported subsequent actions taken in connection with an attempted foreclosure. Mr. Wood, the Chapter 7 Trustee, suspected that there might be other claims available and that he might uncover evidence that would allow him to terminate the security interest of the claimed lienholder in the real property. However, it was only after obtaining the evidence currently available to the Trustee that it is clear that these options are now available.

The relevant timeline and particularly important documents already available to the Court are as follows:

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 2

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

1. The original Deed of Trust, attached to the Declaration of Melissa A. Huelsman filed in support of the Motion for Reconsideration re: LPS MSJ, Exhibit "A" (Dkt. 25).

2. The original Promissory Note with one of the Allonges in question purportedly signed by Jeffery Pittman and with purported endorsements, attached to the Declaration of Melissa A. Huelsman filed in support of Response to LPS' MSJ as Exhibit "E" (Dkt. 25).

3. The Appointment of Successor Trustee, attached to the Huelsman Declaration filed in support of the Motion for a Temporary Restraining Order as Exhibit "8" (Dkt. 3).

4. The Affidavit of Yolanda Sbaffoni filed with the Court in the Debtors' bankruptcy case in support of the Motion for Relief from Stay on January 14, 2009. A true and correct copy of that Affidavit was attached to the Huelsman Dec. filed in support of Response to LPS' MSJ as Exhibit "D". (Dkt. 25).

5. Unrecorded Corporation Assignment of Deed of Trust, purportedly signed by Mr. Pittman on December 9, 2005. However, it has been admitted by the various Defendants in this case that the original of this document no longer exists and it was never recorded in the records of King County, Washington. It only "exists" in the electronic records of the Defendants. This document is attached to the Sbaffoni Affidavit as an exhibit. (Dkt. 25).

6. Lost Assignment Affidavit by Beneficiary recorded in the records of King County, Washington and is attached to the Huelsman Declaration filed in support of the Motion for a Temporary Restraining Order as Exhibit "7" (Dkt. 3).

7. Another Assignment of the Deed of Trust dated July 11, 2007 was recorded in the records of King County, Washington, and is attached to the Huelsman Declaration filed in support of the Motion for a Temporary Restraining Order as Exhibit "6" (Dkt. 3).

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 3

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

8. Proof of Claim filed on behalf of Defendant WAMU in the Debtors' bankruptcy case, attached to the Huelsman Declaration filed in support of Response to LPS' MSJ as Exhibit "B" (Dkt. 25).

9. Proof of Claim filed on behalf of Defendant WAMU in the Debtors' bankruptcy case, attached to the Huelsman Declaration filed in support of Response to LPS' MSJ as Exhibit "C" (Dkt. 25).

**IMPORTANT NEW EVIDENCE**

The new evidence that has made clear the new claims available to the Trustee, which are outlined as follows, as is the discussion about the import of the new evidence. First, the Court needs to look at loan inception, the actions taken to complete and fund the loan, and the manner in which the originating "lender" funded the loan. The deposition of Jeffery Pittman, President of Defendant Platinum Homes, was illuminating in this regard. Mr. Pittman's testimony makes clear that Defendant Platinum Homes and the company "parent" Homeloanadvisors.com did almost nothing in connection with the making of the loan. Defendant Platinum Homes solicited the borrowers and collected information, but almost all of the work and decision-making was done by Long Beach Mortgage, as Defendant Platinum Homes was a "correspondent" lender for that entity. A true and correct copy of the deposition transcript of Jeffery Pittman ("Pittman Dep.") is attached to the Declaration of Melissa A. Huelsman filed concurrently herewith ("Huelsman Dec.") as Exhibit "A". Pittman Dep., 35:3-39:1. Long Beach did the underwriting and approved the loan for purchase after funding. *Id.* A company called "First Collateral Services" was the entity that provided the actual funding for the loan, and its funding of the loan was predicated upon confirmation from Long Beach that it would purchase the loan. *Id.*; *see also,* Pittman Dep. Nevertheless, Defendant Platinum Homes was the lender according to the

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 4

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

loan documents which were sent to the Debtors for signing, through the escrow agent, by that entity. The Promissory Note signed by the Debtors is payable to Def. Platinum Homes. (Dkt. 25, Ex. E).

Mr. Pittman described with a great deal of specificity the process by which the Debtors' loan would have been made, including the signatures of the Debtors and himself. Pittman Dep., 35:5-39:1; 52:2-58:3. Of particular note are the following statements by Mr. Pittman about the process:

> And then the original note -- generally, **the original note would have been shipped from the closing agent directly to our warehouse line of credit**, in this case it would have been First Collateral at that – during that year. 53:16-20
>
> No. **Only the note goes to First Collateral. The original other documents that the borrower signed at closing went to us.** 56:12-14.
>
> Q: . . . so the note would have gone from the escrow agent to First Collateral?
> A: Right.
> Q: And then once First Collateral got money from Long Beach, First Collateral would then send the promissory note to Long Beach?
> A: Correct. 56:25-57:7.

Pittman Dep. (emphasis added).

Mr. Pittman goes on testify about his purported signature on one of the Allonges. Pittman Dep., 58:25-60:5. Mr. Pittman contends that he is certain that one of them is his signature (conveniently for the Defendants, asserting that his signature is on the version which is presently attached to the Note), and he did not know who had signed the other Allonge on his behalf. *Id.* He confirmed again that the Note and Allonge did not meet up until they arrived separately at the offices of the purchaser of the loan, in this case Long Beach Mortgage.

> Q: So typically, though, you just sent allonges directly to the lender who was buying the loan?
> A: Right.
> Q: Directly from your office?
> A: Correct.

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 5

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

Pittman Dec., 62:12-16, Exh. 4 & 5.  Similarly, he had no idea what had happened to the other Allonge, which he asserted that he did not sign.  Pittman Dec., 62:17-19.  Mr. Pittman should also have signed the Corporate Assignment document transferring the beneficial interest in the Deed of Trust to the new owner of the loan as part of the normal process in his office.  *Id.*  However, he asserted that he did not sign the Corporate Assignment which was produced by the Defendants and did not know who had signed his name nor executed the notarization asserting that he had personally signed it in front of her, while simultaneously asserting that the notary whose stamp was used might not have actually signed the notarization.  Pittman Dec., 62:20-75:23, Exh. 6.  What is clear from Mr. Pittman's testimony is that there is no way to actually verify whether its signature on any document as his "signature" is nothing more than loops.  Further, his office staff were regularly signing documents on his behalf and falsifying notarizations and affirmations that it was his signature.  *Id.*

In addition, very little of what Mr. Pittman asserts at deposition or in declarations can be believed.  At the beginning of the deposition, Mr. Pittman had to prove the correct spelling of his name because he has repeatedly utilized alternative spellings of his first name in documents signed under penalty of perjury and in other important legal documents which were then recorded in the public records of Washington and California.  *See,* Pittman Dep., 7:11-8:14; 13:1-14:25; 77:18-86:12 and Exhibits 13 and 14.  These documents included pleadings and forms in connection with Mr. Pittman's own Chapter 7 bankruptcy filing done in late 2008.  *Id.*, 77:19-80:7 and Exhibit 13.  In his bankruptcy case, where he discharged **$4.2 million dollars** in unsecured debt and yet retained his two multi-million dollar homes in Oceanside, California and Newport Shores, California, every single pleading has his first name misspelled.  *Id.*  Mr.

PLAINTIFF'S MOTION TO AMEND COMPLAINT  
TO CONFORM TO THE EVIDENCE  - 6

Law Offices of Melissa A. Huelsman, P.S.  
705 2nd Avenue, Suite 1050  
Seattle, WA 98104  
(206) 447-0103

Pittman and his bankruptcy attorney went to the trouble to include two aliases for him, but somehow couldn't manage to get the spelling on his name correct. *Id.* (Mr. Pittman was identified as Jeffrey A., Jeffrey Allen and Jeff Pittman on those pleadings.) He contended at deposition that he advised his bankruptcy attorney of the error and asked it to be fixed, but such contentions are suspect given Mr. Pittman's propensity for otherwise providing false information in the bankruptcy. Not only was the correct spelling of his first name not listed anywhere on the pleadings, but hs wife, to whom he had been married since 2001 and who signed on all of the Deeds of Trust regarding the two homes, was identified as his "fiancé" in bankruptcy pleadings. *Id.*; 29:1-4, as well as Exhibits 7-10 and 12 and 13 to the Pittman Dep., which includes the Petition and loan documents where his wife is identified as his wife. S*ee also,* Schedules A, D, H and I and Paragraph 16 of the Statement of Financial Affairs from Mr. Pittman's bankruptcy case, which are attached to the Huelsman Dec. as Exhibit "B". Notably Mr. Pittman falsely asserted that he was "single"and did not report any of the household income from his wife. *Id.*, Schedule I. His wife is not listed as a co-debtor nor is she identified as a having any obligation on the mortgage loans. *Id.* Mr. Pittman did not list his wife on Paragraph 16 of the SOFA. *Id.* While Mr. Pittman's wife does not appear to have been a co-signer on the mortgage loans, he nevertheless clearly provided false statements to the Bankruptcy Court about his relationship to her, as well as completely false information about his name. There is no reason to believe any of Mr. Pittman's factual assertions about his signature or much else.

    Further evidence of Mr. Pittman's apparent inability to tell the truth and/or to monitor the manner in which his business was operated came out during the deposition. Mr. Pittman testified that he never authorized anyone else to sign his name and that anyone who did so was acting against his wishes. Pittman Dep., 31:6-35:2; 62:20-75:24. Yet, Mr. Pittman repeatedly

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 7

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

identified numerous documents that were recorded in the records of various counties within Washington which purported to bear his signature, including notarizations, and which he denied signing. *Id.*, including Exhibit 14. The questions presented by his testimony are relatively simple – is Mr. Pittman lying about his signature on these documents? Is he lying regarding his knowledge of the manner in which his business was conducted by his employees? Or is he lying about both? What is clear is that Mr. Pittman has a problematic relationship with the truth when it suits him and that none of his testimony verifying his purported "signature" on the Allonge document currently attached to the Note cannot be believed. It is clear that this Court cannot be certain that the signature on the Allonge is actually Mr. Pittman's signature at all, in spite of his affirmations.

Mr. Pittman's testimony about the manner in which the original Note and Allonge (even if bearing an original signature) become paired up support the claims made by the Trustee and additional claims because it is now clear that Platinum Homes never even became a "holder" at all. Since none of the other Defendants participating in the litigation were actually involved in the making or sale of the loan, they cannot provide any testimony or evidence on those subjects.

When Plaintiff filed his Complaint, it became evident almost immediately after filing that there were typographical errors in the Complaint and thus he amended the Complaint set about serving it upon the various defendants. *See,* Huelsman Dec. (Dkt. 1 and 4). (Original Complaint filed on August 10, 2009 and Amended Complaint filed on August 11, 2009.) Defendant Northwest Trustee immediately contacted counsel for Plaintiff to discuss the claims against for violations of the Deed of Trust Act and the description of the duties owed by a foreclosing trustee based upon recent changes to the DTA. Thus, Plaintiff amended the Complaint for a second time in order to clarify the precise obligations of the foreclosing trustee.

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 8

*Id.* (Dkt. 6). (Second Amended Complaint filed on August 13, 2009 – two days after the first complaint was filed.)

**CONTENTS OF THE AMENDED PLEADING**

As this Court will note by way of the contents of the proposed Third Amended Complaint, the Trustee is adding claims to specifically determine the nature and extent of the debt owed to Defendants Chase and/or Deutsche, if any; avoidance of a lien under 11 U.S.C. § 547; quiet title as against Defendants Platinum Homes, Chase and/or Deutsche; and to clarify the language used by the Plaintiff to plead his claims for violations of the Consumer Protection Act, RCW 19.86, *et seq.* While the possibility always existed at the time that the Trustee filed his initial Complaint that the first position mortgage lien could potentially be voided if there was no legal basis for the lien whatsoever, it was always a remote possibility, especially there were copies of two Allonges included in the records that were available to Trustee at the time of the filing. However, it is only now that the Trustee has conducted discovery that he can properly allege that the entire security interest should be voided. In fact, those claims were only made clear once the Trustee obtained the testimony of Mr. Pittman. It was he who made it clear that he had no credibility as to the validity of his purported signature on one of the Allonges, and that even if he did sign the Allonge presently affixed to the Note, Defendants Chase and/or Deutsche never acquired the status of a holder or of any party that might derive rights from a holder because the Allonge – if signed by Mr. Pittman at all – did not become "affixed" to the Note until after the Note had changed hands at least times by entities purporting to have ownership interests while the Allonge traveled a very different path. *See,* Pittman Dep. and Exhibits.

//

//

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 9

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

# ARGUMENT

A. <u>Standard for Motion to Amend Complaint to Conform to the Evidence</u>.

The standard for leave to amend is governed by Federal Rules of Civil Procedure 15(a)(2), which states that "leave shall be freely given when justice so requires." FRCP 15(a)(2). Unless there is a truly substantial reason to deny the motion, "denial is not an abuse of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). <u>See</u> <u>also</u>, <u>U.S. v. Hougham</u>, 346 U.S. 310, 316 (1961) ("Rule 15 . . . was designed to facilitate amendment of pleading except where prejudice to the opposing party would result") and <u>Scott v. Eversole Mortuary</u>, 522 F.2d 1110, 1116 (9th Cir. 1975) (where there is any conceivable set of facts to support a claim, leave to amend should be granted).

FRCP 15 "provides the parties with flexibility in presenting their claims and defenses. It assures that cases will be heard on their merits and avoids injustices which sometimes resulted from strict adherence to earlier technical pleading requirements." Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2010), 8:1378, citing to <u>Foman v. Davis</u>, <u>supra</u>, at 182 and <u>Slayton v. American Express Co.</u>, 460 F.3d 215, 228 (2nd Cir. 2006). "Rule 15 reflects the limited role assigned to federal pleadings: i.e., their purpose is simply to provide the parties with *fair notice* of the general nature and type of the pleader's claim or defense. As long as such notice has been provided, the pleading should not limit the pleader's claims or defenses." RUTTER GROUP, <u>supra</u>, *citing to*, <u>Foman</u>, <u>supra</u>, and <u>Grier v. Brown</u>, 230 F.Supp.2d 1108, 1111 (N.D. CA 2002). While "leave to amend should not be granted automatically", the circumstances under which Rule 15(a) "permits

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 10

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

denial of leave to amend are limited." RUTTER GROUP, 8:1461, *citing to*, <u>Ynclan v. Dept. of Air Force</u>, 943 F.2d 1388, 1391 (5th Cir. 1991).

The <u>Foman</u> case discussed the few factors that weigh against the granting of a motion to amend. The reasons to deny a motion to amend are identified as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." <u>Foman</u>, 371 U.S. at 182. Plaintiff maintains that none of these factors apply here. The Trustee has not improperly delayed in bringing this Motion. There have been numerous delays in obtaining discovery responses from the various defendants, as the responsive documentation has been trickling in to his attorney for months since the responses were originally due in November 2009. *See,* Huelsman Dec., ¶4-6. In fact, Defendant Deutsche Bank provided Plaintiff with responsive documents on the day of the corporate representative's deposition, claiming that it had just "discovered" that certain responsive documents had not yet been produced. *Id*.

Plaintiff was unable to take the depositions of the corporate representatives of Defendants Chase and Deutsche until the end of April 2010 because of disputes among the parties and the filing of a motion for protective order. *Id.* Plaintiff did not take the deposition of Mr. Pittman until the end of April, because it was necessary to get the information from him after having all documentation from the other defendants. Plaintiff obtained the deposition transcripts of Mr. Pittman two weeks ago. *Id.* In fact, there is still time for Mr. Pittman to try to correct his testimony, but Plaintiff has nevertheless moved forward with his motion because of the looming trial date and recent comments made by the Court as regards to getting the work on the case completed. *Id.* Further, there is no time limit for amendment under FRCP 15(a)(2).

PLAINTIFF'S MOTION TO AMEND COMPLAINT TO CONFORM TO THE EVIDENCE - 11

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103

There is no valid argument that the defendants will be prejudiced by the amendments since they are being brought in order to conform to the evidence which has been adduced during the discovery process. There is no bad faith, as the Trustee is simply bringing the claims that have become clearly evident once more information was obtained about the making of the loan and the actions of the Defendants in connection with the purported sale and transfer of the Debtors' loan. The policy of allowing amendment should be applied with "extreme liberality". Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) and Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993). The burden is on the opposing party to convince the Court that "justice" requires denial. Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 406-407 (11th Cir. 1989). Here, the Defendants cannot meet that burden.

## CONCLUSION

For the reasons stated above, the Trustee respectfully requests that this Court allow him to amend his Complaint in order to conform to the evidence.

Dated this 4th day of June 2010.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

*/s/ Melissa A. Huelsman*
Melissa A. Huelsman, WSBA #30935
Attorney for Plaintiff

PLAINTIFF'S MOTION TO AMEND COMPLAINT
TO CONFORM TO THE EVIDENCE - 12

Law Offices of Melissa A. Huelsman, P.S.
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-0103